**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **KASSANDRA ELEJARZA** | § | |
| *Plaintiff,* | § | |
| | § | |
| **Vs.** | § | |
| | § | **CIVIL ACTION NO. 7:25-CV-99** |
| | § | |
| **GOODLEAP, LLC, TRISMART SOLAR,** | § | |
| **LLC, CALEB PHILLIPS, and VIVINT, LLC** | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO ALL DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND TO DEFENDANT GOODLEAP'S ARBITRATION-BASED MOTIONS TO DISMISS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Kassandra Elejarza, Plaintiff, by and through her counsel, and files this Brief in Opposition to All Defendants' Motions to Compel Arbitration and to Defendant Goodleap's Arbitration-Based Motions to Dismiss. Plaintiff respectfully shows this court the following:

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 3

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................................ 5

III.  ARGUMENT AND AUTHORITIES ........................................................ 7

    A.   **All Defendants Have Waived Arbitration, and Goodleap's own Statements Negate its Bases for Dismissal on the basis of Subject Matter Jurisdiction and Venue** .............. 7

    B.   **TriSMART's Arbitration Provision is Unenforceable** ............................ 12

       i.    **Evidentiary Objections to TriSMART's "Arbitration Agreement"** ............. 12

       ii.   **Additional Evidentiary Objections to the TriSMART Contract Attached to** *Goodleap's* **Motion** ................................................................. 15

       iv.   **TriSMART's Warranty Agreement is Illusory, as it the Arbitration Provision Within it** ................................................................. 18

       v.    **Vivint and Phillips's Motions to Compel Arbitration under the TriSMART provision should be denied.** ................................................ 20

    C.   **Goodleap's Arbitration Provision is Unenforceable** ............................ 21

IV.  **PRAYER** ............................................................................ 27

**CERTIFICATE OF SERVICE** ............................................................ 27

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

1.1.    This case arises from a single, coordinated consumer transaction in which Plaintiff Kassandra Elejarza was misled into entering a deceptive and damaging solar panel installation and financing agreement involving all named Defendants. Plaintiff brings various state claims arising out of that transaction including violations of the Texas Deceptive Trade Practices Act (DTPA), Breach of Contract, Common Law Fraud, Fraud in the Inducement, Conspiracy to Commit Fraud, Tex. Civ. Prac. & Rem. Code Chapter 12 violations, Consumer Credit Code Violations, a Declaratory Action, and a single Federal Claim (TILA Violations) against Defendant Goodleap.

1.2.    The parties (except Vivint and Phillips) litigated this matter for a year in state court. On the eve of trial, Goodleap removed this matter to federal court after Plaintiff amended her state petition to include TILA violations. All Defendants consented to removal. Plaintiff was opposed and filed a Motion to Remand [Dkt. 18] this matter back to state court, which this Court denied. All four Defendants filed a Joint Response to Plaintiff's Motion to Remand. [Dkt. 22]. On nine separate occasions ranging from the introductory paragraph to the conclusion of that Joint Response, all four Defendants insisted that this Court has subject-matter jurisdiction over this case.[1]

1.3.    Notwithstanding a joint agreement between all four Defendants that this Court has subject matter jurisdiction over this case, Defendant Goodleap contends that this matter should be dismissed under FRCP 12(b)(1) for lack of subject matter jurisdiction. *See* [Dkt. 5] at 6. Likewise,

---

[1] "This Court has subject matter jurisdiction because Plaintiff Kassandra Elejarza ("Plaintiff") has made a claim "arising under the Constitution, laws or treaties of the United States." [Dkt. 22] at 1; "There is federal subject matter jurisdiction… there is federal question jurisdiction under 28 U.S.C. § 1331. Moreover, this Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a)." *id.* at 1-2; "This Court has Federal Question subject matter jurisdiction over Plaintiff's Federal Truth in Lending Act claim." *Id.* at 4; "This Court clearly has subject matter jurisdiction over the claim under federal law, and remand is improper despite Plaintiff's argument to the contrary." *Id.* at 5; "The Court has Supplemental Jurisdiction over the remaining claims in Plaintiff's First Amended Petition." *Id.* at 6; "This Court has subject matter jurisdiction over all the claims in Plaintiff's First Amended Petition." *Id.* at 7.

despite allowing this matter to proceed in state court for an entire year, only to remove it to a new venue (this Court) on the eve of trial, Goodleap also contends that the venue *it removed this litigation to* is improper and that this matter should be dismissed for improper venue under FRCP 12(b)(3).[2] Defendants are unequivocally driving up the costs of litigation with needless and bad faith forum-shopping which this Court should not permit. This Court should deny Goodleap's Motions to Dismiss based upon Goodleap's own statements against interest made in subsequent filings. Goodleap, in tandem with other Defendants, fought to recommence this litigation in a new brand new forum when trial was imminent and fought to keep this litigation here by opposing Plaintiff's Motion to Remand. Defendants should not now also be gifted yet another forum after the forum they selected is also one which they perceive to be unfavorable, particularly when each Defendant jointly claimed that this Court has jurisdiction over all claims raised by Plaintiff.

1.4.    Despite having previously removed this case to federal court and affirmatively opposing Plaintiff's motion to remand, each Defendant now moves to compel arbitration and/or dismiss Plaintiff's claims under Rule 12. These motions rest on inconsistent legal positions, rely on procedurally and substantively flawed arbitration agreements, and—most importantly—fail to address the fundamental impracticality of enforcing conflicting arbitration clauses against claims that arise from a single occurrence.

1.5.    The motions should be denied for five key reasons:

(1.)    Defendants are judicially estopped from compelling arbitration after previously asserting the Court's subject-matter jurisdiction to oppose remand.

(2.)    No valid arbitration agreement exists between Plaintiff and TriSMART or Vivint, and Vivint, as a nonsignatory, cannot invoke equitable estoppel.

---

[2] *See* [Dkt. 5] at 8 ("… venue is improper in this Court and/or this Court also lacks subject-matter jurisdiction… JAMS is the only proper venue with subject-matter jurisdiction over Plaintiff's claims.")

(3.)    The arbitration agreements are unconscionable, both procedurally and substantively.

(4.)    Plaintiff's claims sound in tort and statutory violations, not contract, and therefore fall outside the scope of the arbitration clauses.

(5.)    The arbitration provisions are materially inconsistent across the contracts, making joint arbitration impossible and fragmented arbitration untenable.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

2.1.    Plaintiff was approached by a door-to-door salesman, Defendant Phillips. Phillips acted as a salesman for Defendant Vivint (known most commonly for installing home alarm systems). As part of his door-to-door sales portfolio, Phillips also sold solar, having authority extended to him by Defendant TriSMART who would handle much of the sale closing and installation once Phillips had identified an interested prospective customer (a "lead" such as Plaintiff). Phillips made numerous misrepresentations to Plaintiff regarding the benefits and performance of the solar system which Plaintiff ultimately agreed to purchase from Vivint/TriSMART. Phillips wore a shirt which said "Vivint" on it at the time he induced Plaintiff to purchase a solar system and held himself out as an agent of Vivint.[3] Plaintiff relied on Phillips' misrepresentations to her detriment and suffered damages by agreeing to purchase the solar system from Phillips, who provided her with TriSMART's installation agreements and a pre-approval agreement with Goodleap which in no way reflected the oral representations and warranties that Phillips had made to her.

2.2.    After Phillips pitched a door-to-door sale which seemed too good to be true, Plaintiff quickly realized that it was. TriSMART installed a system which was missing numerous crucial parts, including a battery which was promised and the system was never accessible through

---

[3] Plaintiff notes that while Phillips was a named defendant in the state court action for a year, he never appeared in that litigation. His first appearance was before this court in conjunction with Vivint's appearance, verifying the suspicion that he was actually employed by Vivint at the time of the sale, and not by Defendant TriSMART.

the phone application Enphase, through which a homeowner would ordinarily be able to track the production of the system. The system required numerous house calls and maintenance calls and TriSMART failed to ever rectify any of Plaintiff's concerns. Plaintiff's monthly energy bills increased instead of being "reduced and/or eliminated" by the solar system, as she was promised. Since the date of installation through the present, Plaintiff has realized no actual benefit of the system. Instead, she has – in addition to her increased energy bills – been straddled with monthly payments owed to Defendant Goodleap which financed the sale of the solar system. Thereafter, when Plaintiff was unable to meet the financial demands Goodleap was making of her to pay the monthly installments on a system which never performed, Goodleap offered her an olive branch: Goodleap offer Plaintiff an opportunity to completely refinance her home (burying the solar loan into a new mortgage). Goodleap made numerous misrepresentations to Plaintiff to induce her to refinance her entire home, consolidating her solar loan into her mortgage payments. As Goodleap typically does, thereafter, it sold the mortgage to another company, which sold it to another, and Plaintiff's mortgagee has repeatedly changed with the costs associated with the solar loan concealed within this mortgage.

2.3.    Plaintiff sued all Defendants (except Vivint) initially based upon the only contracts which she had available and was able to provide to the undersigned counsel. Following state court discovery, Plaintiff added Vivint as a Defendant. Throughout a year of litigation, no party ever moved to compel arbitration.

2.4.    On the even of trial, after availing themselves to the jurisdiction of the State Court, then opposing a motion to remand this litigation back to that state court by insisting that *this* Court has jurisdiction, all Defendants have Moved to Compel Arbitration under two dissimilar arbitration provisions.

2.5.    In support of their varying Motions to Compel Arbitration, the Defendants rely on two separate contracts. Goodleap relies on a DocuSign initialed arbitration provision within its contract (herein the "Loan Agreement"). [Dkt. 5-2]. TriSMART relies upon an unsigned arbitration provision contained within a contract (herein the "Installation Agreement).[4] Vivint and Phillips – nonsignatories to both agreements – rely on both agreements, without specifically claiming which one is binding on them or how they would be bound by them. Importantly, both arbitration provisions contain materially different substantive and procedural rights and duties. It is impossible for either provision to operate without being in conflict with the other.

## III.    ARGUMENT AND AUTHORITIES

### A.  All Defendants Have Waived Arbitration, and Goodleap's own Statements Negate its Bases for Dismissal on the basis of Subject Matter Jurisdiction and Venue

3.1.    For decades, the Fifth Circuit has held "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir.1991) (internal quotation marks and citation omitted). "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co v. PAICO.,* 383 F.3d 341, 344 (5th Cir. 2004) (citation omitted).

3.2.    In a unanimous 2022 opinion from the Supreme Court, the prejudice <u>requirement</u> was stripped nationally resolving a circuit split that disproportionally required a finding of prejudice. *See Morgan v. Sundance, Inc.,* 596 U.S. 411 (2022). In *Morgan*, the Supreme Court provided important guidance to the nation, holding:

> "We consider only the next step in their reasoning: that they may create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's "policy favoring arbitration." *Moses H. Cone Memorial Hospital v.*

---

[4] Goodleap has taken the courtesy of filing the full copy of this contract as [Dkt. 5-3]. TriSMART only filled a 2-page except in its Motion to Compel Arbitration. [Dkt. 11-1].

*Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). They cannot. For that reason, the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice.

…

To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other. As Judge Colloton noted in dissent below, a contractual waiver "normally is effective" without proof of "detrimental reliance." 992 F.3d at 716; see *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (C.A.7 1995) (Posner, C. J., for the Court). So in demanding that kind of proof before finding the waiver of an arbitration right, the Eighth Circuit applies a rule found nowhere else—consider it a bespoke rule of waiver for arbitration.

…

The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. See *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration. See *ibid.*; *National Foundation for Cancer Research v. A. G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (C.A.D.C. 1987) ("The Supreme Court has made clear" that the FAA's policy "is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism").

…

And indeed, the text of the FAA makes clear that courts are not to create arbitration-specific procedural rules like the one we address here. Section 6 of the FAA provides that any application under the statute—including an application to stay litigation or compel arbitration— "shall be made and heard in the manner provided by law for the making and hearing of motions" (unless the statute says otherwise). A directive to a federal court to treat arbitration applications "in the manner provided by law" for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness. Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration. As explained above, the usual federal rule of waiver does not include a prejudice requirement. <u>So Section 6 instructs that **prejudice is not a condition of finding** that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA</u>."

*Id*. (emphasis added).

3.3.    The Supreme Court, wholly eviscerated prejudice as a necessary finding to find waiver. The Supreme Court also provided additional guidance regarding how much discovery is necessary to find waiver:

> "Although the District Court found the prejudice requirement satisfied, the Court of Appeals disagreed and sent Morgan's case to arbitration. **The panel majority reasoned that the parties had not yet begun formal discovery or contested any matters "going to the merits."** 992 F.3d at 715. Judge Colloton dissented. He argued that <u>Sundance had "led Morgan to waste time and money" opposing the motion to dismiss and "engaging in a fruitless mediation."</u> *Id.*, at 717. More fundamentally, he raised doubts about the Eighth Circuit's prejudice requirement. Outside the arbitration context, Judge Colloton observed, prejudice is not needed for waiver. See *id.*, at 716. In line with that general principle, he continued, "some circuits allow a finding of waiver of arbitration without a showing of prejudice." *Id.*, at 716–717.
>
> We granted certiorari, 595 U. S. ——, 142 S.Ct. 482, 211 L.Ed.2d 292 (2021), to resolve that circuit split. Nine circuits, including the Eighth, have invoked "the strong federal policy favoring arbitration" in support of an arbitration-specific waiver rule demanding a showing of prejudice. Two circuits have rejected that rule. We do too."

*Id.* at 415-416. While ultimately the Supreme Court did not decide the issue of arbitrability in the *Morgan* case itself (only vacating the Court of Appeal's judgment with instruction that prejudice is no longer a required finding), its dicta gave credence to the Eighth Court of Appeal's Judge Colloton's position that wasting time and money opposing a motion to dismiss and engaging in mediation should not be permitted where a party to the litigation may later opt to turn around and pursue compelled arbitration.

3.4.    Much of the Fifth Circuit's precedent is still valid to this day – though much of it was decided on the now-defunct basis that there was no sufficient showing of prejudice by the party opposing arbitration. To invoke the judicial process, a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 329 (5th Cir.1999).

3.5.    Within the Fifth Circuit, a bright-line rule has been found to be inappropriate for deciding whether a party has waived its right to arbitration. Rather, precedent establishes that "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case." *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (citing *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir.1985)). A party cannot attempt to game the system by seeking a decision on the merits while keeping the arbitration option as a backup plan in case the effort fails. *Id*.

3.6.    When a party (as Defendant Goodleap did here) simultaneously moves to dismiss a lawsuit and in the alternative seeks to compel arbitration, generally the Fifth Circuit has not found waiver to be present. *See, e.g., Keytrade USA, Inc. v. Ain Temouchent M/V,* 404 F.3d 891, 897–98 (5th Cir.2005) (finding no waiver where a defendant concurrently filed a motion to compel arbitration with a motion for summary judgment and then appealed the denial of the motion to compel arbitration); *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai,* 141 F.3d 234, 236–38 (5th Cir.1998) (finding no waiver where defendant filed motion to dismiss contemporaneously with a motion to compel arbitration and appealed the denial of the motion to compel arbitration).

3.7.    The Fifth Circuit's analysis of such fact patterns however is rooted in Motions to Dismiss or for Summary Judgment filed at the ***outset*** of litigation, or soon thereafter. Parties to arbitration agreements should not be permitted to avail themselves to the judiciary when they are "fully aware of [their] right to compel arbitration from the outset." *In re. Mirant Corp*., 613 F.3d at 590. The Defendants to this litigation attempt somehow to argue that this litigation is in its infancy. This position (other than as raised by Vivint who only recently appeared) is laughable. Not only did Defendants avail themselves to the judiciary, but they litigated for ***an entire year,***

mediated this matter before trial, then they **chose** this Court by removing this case, and fought to keep this case in this Court in their joint response in opposition to Plaintiff's Motion to Remand.

3.8.    This litigation has been ongoing for over a year and trial was less than thirty days away when Goodleap removed it in response to Plaintiff's pre-trial amendment to her state court petition. Goodleap only removed this litigation to this Court on the eve of the state court trial setting. Goodleap insisted *after it picked this Court* in its Motion to Compel Arbitration that this Court was an improper venue and lacked subject matter jurisdiction.[5] Goodleap then wholly back-peddled on that position in its Joint Response to Plaintiff's Motion to Remand, insisting that this case must be maintained in this venue.[6] This Court should not permit blatant forum-shopping such as this. The parties have needlessly exhausted substantial costs and fees, thereby suffering prejudice – which the Supreme Court has ruled is not even required anymore to find waiver – through over a year of litigation which, in theory, could have been avoided had Defendants opted to compel arbitration over a year ago in state court. Both Goodleap and TriSMART – the parties with actual contractual arbitration provisions (as opposed to Vivint and Phillips who seek only to leach off of either one of these provisions or both) – chose to litigate this matter for a year and mediate before trial. At any point in the state court action – since their first appearances – either Defendant could have sought arbitration (which Plaintiff would have opposed). Neither Defendant

---

[5] *See* [Dkt. 5] at 8 ("… venue is improper in this Court and/or this Court also lacks subject-matter jurisdiction… JAMS is the only proper venue with subject-matter jurisdiction over Plaintiff's claims.")

[6] "This Court has subject matter jurisdiction because Plaintiff Kassandra Elejarza ("Plaintiff") has made a claim "arising under the Constitution, laws or treaties of the United States." [Dkt. 22] at 1; "There is federal subject matter jurisdiction… there is federal question jurisdiction under 28 U.S.C. § 1331. Moreover, this Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a)." *id.* at 1-2; "This Court has Federal Question subject matter jurisdiction over Plaintiff's Federal Truth in Lending Act claim." *Id.* at 4; "This Court clearly has subject matter jurisdiction over the claim under federal law, and remand is improper despite Plaintiff's argument to the contrary." *Id.* at 5; "The Court has Supplemental Jurisdiction over the remaining claims in Plaintiff's First Amended Petition." *Id.* at 6; "This Court has subject matter jurisdiction over all the claims in Plaintiff's First Amended Petition." *Id.* at 7.

did. They instead sought to start litigation over in this Court, and now seek to start from scratch for a third time in arbitration. These acts are all wholly inconsistent with an intent to arbitrate.

3.9.    The Fifth Circuit has repeatedly found that parties who sit idly by in litigation waive arbitration rights. *See e.g. Republic Ins. Co.*, 383 F.3d at 344 (affirming a finding of waiver where a party sought arbitration "days before trial" was scheduled to begin); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159, 1162 (5th Cir.1986) (holding that the party moving for arbitration had waived that right because it had "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration," and the "'mounting attorney's fees,' 'seventeen month delay', and 'disclosure which has resulted from the numerous depositions and production of documents' constituted prejudice sufficient" to support the waiver of arbitration). Plaintiff has incurred substantial costs and fees over the past year and a half and should not now be forced into one or several arbitration proceedings solely because Defendants seek to capitalize on this frustration and prejudice to force a settlement.

## B.    TriSMART's Arbitration Provision is Unenforceable

### i.    Evidentiary Objections to TriSMART's "Arbitration Agreement"

3.10.    Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court. *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists. Instead, the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688-689 (5th Cir. 2018) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-8 (Tex. 2003)). In addition, because the validity of an agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply. *Klein v. Nabors Drilling USA, L.P.*, 710

F.3d 234, 236 (5th Cir. 2013). *See also, Gallagher v. Vokey*, 860 Fed.Appx. 354, 357-358 (5th Cir. 2021) (before an opposing party bears a burden of refuting the existence of an agreement to arbitrate, the party compelling arbitration must come forth with "***competent*** evidence showing the formation of an agreement to arbitrate.")(emphasis added).

3.11.    As a preliminary matter, TriSMART did not file competent evidence for this Court to summarily order arbitration. Attached to its Motion to Compel Arbitration was a 2-page excerpt of an arbitration provision (the footer of which indicate it includes pages 7 and 8 of a larger agreement). [Dkt. 11-1]. Plaintiff objects to consideration of this document on numerous evidentiary grounds.

3.12.    First, TriSMART has not submitted a complete copy of the agreement from which the excerpt is taken, making it impossible to evaluate the full context, mutual obligations, or any conditions precedent to arbitration. The document is facially incomplete and fails to establish the parties' mutual assent to its terms. The excerpted nature of the submission raises serious questions about what additional provisions may modify, limit, or condition the arbitration clause. Plaintiff therefore objects to consideration of this two-page documentary excerpt under the Doctrine of Completeness. FRE Rule 106.

3.13.    Second, the document is unauthenticated. There is no supporting affidavit or declaration from a custodian of records, company representative, or witness with personal knowledge affirming that the document is a true and correct copy of any agreement entered into by Plaintiff. Without such authentication, the document is inadmissible under FRE 901, and this Court may not consider it in deciding a motion to compel arbitration.

3.14.    Third, the document does not contain Plaintiff's name, initials, or signature, nor does it refer to any identifiable transaction, date, or counterpart agreement. It is, in effect, a floating

contract term without any foundation linking it to Plaintiff. Courts routinely reject attempts to compel arbitration based on unsigned or incomplete documents lacking evidentiary connection to the party against whom arbitration is sought. See *Huckaba v. Ref-Chem, L.P., 892 F.3d 686*, 689 (5th Cir. 2018) (refusing to compel arbitration where the agreement was unsigned and lacked mutuality).

3.15.   Fourth, even if the excerpt were somehow admissible, it lacks specificity regarding the governing arbitration rules, costs, forum, or even what types of disputes are covered. For example, its terms state "BECAUSE CUSTOMER AND TRISMART HAVE AGREED TO ARBITRATE ALL DISPUTES EXCEPT AS SPECIFICALLY PROVIDED IN THE LAST PARAGRAPH OF THIS SECTION X, CUSTOMER AND TRISMART WILL NOT HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN DOURT…" however, Section X refers to Early Termination of a Warrant Agreement. The terms of the arbitration clause itself are ambiguous in its reference to paragraphs and sections in a larger contract which, even when not included, still make no sense. Further, the arbitrator's authority under the provision includes: "The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court could order or grant under this Warranty Agreement." The warranty agreement itself is entirely separate from the actual installation agreement entered into by Plaintiff, and is not the contract which she has sued TriSMART under. Where an arbitration clause is ambiguous, it must be construed against the drafter—here, TriSMART—particularly in a consumer setting. See *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). As an evidentiary matter, this 2-page excerpt is wholly unreliable for all these reasons as inadmissible hearsay to which no exception applies.

3.16.   In short, TriSMART has failed to meet its burden to show the existence of a valid, enforceable agreement to arbitrate. Its evidentiary submission is both procedurally deficient and

substantively inadequate, and cannot support an order compelling arbitration. TriSMART's motion must be denied on this basis alone.

ii.    Additional Evidentiary Objections to the TriSMART Contract Attached to *Goodleap's* Motion

3.17.    Goodleap attached a full copy of what it purports is the TriSMART installation agreement to its own Motion to Compel Arbitration. [Dkt. 5-3]. Plaintiff maintains all evidentiary objections already asserted, and further objects to consideration of this document on the basis that Goodleap cannot authenticate this document and it is hearsay.

3.18.    There are also no facts in any affidavit showing that the signature on the installation agreement belongs to Plaintiff, or that the electronic signatures are verified through "the efficacy of any security procedure . . . to determine the person to which the electronic record or electronic signature was attributable." *See Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 200 (Tex. 2021). Defendant TriSMART must show that the electronic record used to support arbitration cannot be created or changed ***without*** unique, secret credentials attributable to the one person who holds those credentials. *Id.* at 206. (emphasis added).

3.19.    The document attached to Goodleap's Motion to Compel Arbitration clearly indicates that signatories to the document contemplated that the transaction be done by electronic means. Therefore, the Texas Uniform Electronic Transactions Act applies. Tex. Buis. & Comm. C. 322.009. As such, TriSMART was required to have provided testimony in affidavit form as to its security credentials using "DocuSign" and how those security measures make Defendant TriSMART believe that the electronic signature of Plaintiff on the installation agreement is attributable to her. TriSMART offers no testimony whatsoever, and indeed, TriSMART did not even file this document with the Court – Goodleap did.

3.20.    Goodleap cannot authenticate this document as it was neither a signatory nor a holder of the document and the document is hearsay without exception. Goodleap attaches the

affidavit of Maria Mellott in an attempt to authenticate this document. Mellott explains in ¶¶ 8-13 of her affidavit how she believes the *Goodleap* loan agreement was executed. However, she offers no testimony whatsoever to authenticate the *TriSMART* agreement.

3.21.    Instead, in ¶5, Mellott makes a single conclusory statement: "[O]n or about February 26, 2022, Plaintiff executed a Solar Photovoltaic Installation Agreement (the "Purchase Agreement") for the installation of solar panels and roof improvements on real property located at 1201 W Jasmine Ave, Alamo, TX 78516 (the "Property). (Fn 2: A true and correct copy of the Purchase Agreement is attached hereto as Exhibit A-2.)".

3.22.    Mellott avers that this fact was "true and correct and within her personal knowledge,"[7] but offers no explanation whatsoever to support how she has any personal knowledge when she had no personal involvement with the sale. Goodleap's attempt to authenticate this document as a business record does not satisfy the underlying need to authenticate the signatures and agreements contained therein. Plaintiff notes that page 20 of [Dkt. 5-3] contains a purported signature of a "Taylor Pratt, funding director," page 7 of [Dkt. 5-3] contains the signature of "D. Joe Griffin, General Counsel," and page 1 of [Dkt. 5-3] states that "caleb.phillips@vivint.com" was the energy consultant's email. None of these individuals have attempted to authenticate any of the numerous documents contained within [Dkt. 5-3].[8] Moreover, these signatures are likewise not included on the docusign certificate included on Page 21.

iii.    The TriSMART's Arbitration Provision is Limited to the Warranty Agreement

---

[7] *Id*. at ¶ 2.
[8] Plaintiff notes that "D. Joe Griffin" is actually TriSMART's counsel in these proceedings, but he is clearly a fact witness if he was the person who contracted with Plaintiff on behalf of TriSMART as this document seems to suggest. As further bases for the unenforceability of the arbitration provision are unraveled, *infra*., it will become clearer why TriSMART only included a 2-page excerpt as its "evidence."

3.23.    Assuming, *ad arguendo*, that the document attached as "Exhibit A-2" to Goodleap's Motion to Compel Arbitration actually constituted competent evidence – which it does not – its terms still have no bearing on this litigation.

3.24.    Page 1 of this document refers to "This Solar Photovoltaic Installation Agreement." The heading "**SOLAR PHOTOVOLTAIC AGREEMENT**" is present on 11 pages, each of which are tracked chronologically in a page number at the bottom-right corner of each page. Pages 8, 9, 10, and 11 include a Notice of Cancellation form, an HOA Notice Form, a Generator Adder Notice, and a Battery Adder Notice (titled Exhibits A, B, C, and D, respectively). No arbitration provision is contained anywhere throughout the 11-page installation agreement.

3.25.    Totally separate from this 11-page installation agreement (beginning on the twelfth page) is another agreement: a 9-page Warranty Agreement. Each page of this Warranty Agreement is also numbered 1 through 9 in the bottom right corner of each page, and the final page contains the electronic signature of what Defendants are likely to claim is Plaintiff's signature.

3.26.    Without conceding that this document constitutes competent evidence, it is clear that there are two separate and distinct documents: (1.) an installation agreement, and (2.) a warranty agreement.[9]

3.27.    Admittedly, the Installation Agreement references "the "**Warranty Agreement**" in a single provision located within Section 25 on Page 6. The provision states the following:

> "TriSMART Solar acknowledges that Implied Warranties (Workmanship and Roof Penetration) exist in almost every state and are governed as such. TriSMART Solar agrees to abide by and honor these Implied Warranties. All other warranties are contained in the "**Warranty Agreement**" attached hereto."

---

[9] Defendant TriSMART acknowledges that there are two separate documents in its Motion to Compel Arbitration. *See* [Dkt. 11] at ¶ 2.1. Curiously, TriSMART omits that no arbitration clause is contained within the "Solar Photovoltaic Agreement," and just jumps into its argument that an arbitration provision *exists* and therefore governs anything and everything, which is demonstrably false, as are TriSMART's contentions that it "has acted promptly to enforce the arbitration agreement." *Id.* at ¶ 2.2.

3.28.    Importantly, **only** "All other warranties" are contained in the Warranty Agreement. TriSmart's Installation Agreement expressly states that it will abide by and honor implied warranties under state law in the express terms of the installation agreement. Moreover, the installation agreement itself does not contain any arbitration provision. The arbitration clause is limited in scope only to "all other warranties" expressly listed in the separate **warranty agreement**. The arbitration provision has no bearing on the installation agreement as a whole – it only governs breaches of those warranties expressly listed within the Warranty Agreement, where it is contained.

    iv.    <u>TriSMART's Warranty Agreement is Illusory, as it the Arbitration Provision Within it</u>

3.29.    In analyzing the Warranty Agreement, it is entirely illusory. For example, with regard to actual **<u>warranties</u>**, the "<u>Power Production Guarantee</u>" on page 2, the following is stated:

> "TriSMART guarantees that during the Warranty Term the System will generate the guaranteed annual kilowatt-hours ("Guaranteed Annual kWh") in the table set forth in Exhibit A."

There is one glaring issue with this warranty, however: **There is no Exhibit A**. To the extent "Exhibit A," could be construed to relate back to the installation agreement, that would also make no sense, as Exhibit A is a "Notice of Cancellation" form. Nothing contained anywhere within the warranty agreement states a specific guarantee of annual kWh production. The Power Production Warranty is illusory. To the extent Plaintiff alleges breach of warranty (expressly stated, expressly written, implied, or otherwise) for anything that could be construed as a "power production guarantee" warranty, it would be wholly improper to address these claims under the Warranty Agreement.

3.30.    Likewise, TriSMART makes a "<u>Repair Promise</u>" warranty on page 1, which states:

> "If our contractors damage the Customer's Property, or Customer's belongings, TriSMART will cause its contractors to repair the damage they cause or pay Customer for the damage as described below in Section 4."

However, Section 4 makes absolutely no reference to damages, repairs, or payments, rendering another warranty entirely illusory. The <u>Roof Warranty</u> on page 1, as written, literally warrants that TriSMART or its contractors will cause roof damage.

3.31.   Further, the **<u>term</u>** of the Warranty Agreement is entirely illusory, providing the following on page 1:

> "This Warranty Agreement begins on the date the System is connected to the electrical grid (the "Interconnection Date") and shall end twenty-five (25) years after Customer's first required monthly payment due date under the related Loan and Security Agreement Customer is entering into with the Creditor (the "Warranty Term")."

Neither the installation agreement nor the warranty agreement identify who the "Creditor" is or incorporate any Loan and Security Agreement by any discernible explicit reference. The term of the warranty agreement is completely illusory.

3.32.   Page 4 likewise states that "Customer may only remove and replace the System pursuant to Section IV of this Warranty Agreement." However, Section IV says nothing whatsoever about removing or replacing the system, but instead lists the Standards for TriSMART's performance, rendering the rights and duties of the parties under the Warranty agreement illusory.

3.33.   Plaintiff encourages the Court to review this Warranty Agreement in its entirety. Whether its entire illusory nature was the result of horrendous draftsmanship or written with purposeful ambiguity, any provision contained within it is virtually incomprehensible. The arbitration provision itself, to the extent it may govern the warranties contained within the Warranty Agreement, is itself rendered illusory. Further, as addressed, *supra*., the arbitration provision is not part of the Installation Agreement – it is contained solely within the separate Warranty Agreement. The installation agreement makes no references to arbitration whatsoever.

On the contrary, the following provision on Page 8 makes clear that arbitration is limited to claims arising under the Warranty Agreement.

> "The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court could order or grant under this Warranty Agreement."

The words "Warranty" and "Agreement" are capitalized, and the word "this" clearly indicates an intent for arbitration to be limited only to disputes under the Warranty Agreement – not the installation agreement.

3.34.   The arbitration provision states "BECAUSE CUSTOMER AND TRISMART HAVE AGREED TO ARBITRATE ALL DISPUTES EXCEPT AS SPECIFICALLY PROVIDED IN THE LAST PARAGRAPH OF THIS SECTION X," however, the arbitration provision is not Section X, it is Section XI. Section X unrelatedly refers to early termination of the Warranty Agreement. Therefore, it is ambiguous what disputes within the Warranty Agreement are even subject to arbitration.

3.35.   Numerous other issues with the enforceability of this arbitration provision will be addressed *infra*., in light of the totality of the transaction and Goodleap's dissimilar arbitration.

v.   Vivint and Phillips's Motions to Compel Arbitration under the TriSMART provision should be denied.

3.36.   Neither Vivint nor Phillips should be permitted to seek arbitration under the TriSMART provision for all the reasons addressed herein.

3.37.   Moreover, the express language of the provision states: "Only disputes involving Customer and TriSMART may be addressed in the arbitration." Neither Vivint nor Phillips provide any basis for tagging along into arbitration permitted under the terms of the otherwise unenforceable arbitration provision.

3.38.   Further, Vivint and Phillips are not parties to the TriSMART Warranty Agreement. Instead, Vivint invokes the doctrine of equitable estoppel under *Grigson v. Creative Artists Agency*

*L.L.C.*, 210 F.3d 524 (5th Cir. 2000), claiming that Plaintiff's claims are intertwined with those agreements. But *Grigson* applies only when: (1.) A signatory plaintiff must rely on the terms of the contract in asserting claims against the nonsignatory; or (2.) The plaintiff alleges substantially interdependent and concerted misconduct between the nonsignatory and signatory.

3.39.    Neither prong applies here. Plaintiff asserts independent tort claims against Vivint and Phillips, based on oral misrepresentations and sales conduct, separate and distinct from the written "agreements." These are not dependent on the written contract. Courts in the Fifth Circuit have consistently declined to compel arbitration under *Grigson* where, as here, the claims are not rooted in the contract itself. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003).

## C.    Goodleap's Arbitration Provision is Unenforceable

3.39.    Plaintiff incorporates all past arguments herein, and pleads the following additional defenses to arbitration with regard to Goodleap's arbitration provision.

3.40.    Arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 399 (2011). Contract defenses are a matter of state substantive law and Texas accepts all of these contract defenses to arbitration as well. *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883 (Tex. 2010). A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration agreement and (2) the claims in dispute fall within that agreement's scope. *In re Rubiola* , 334 S.W.3d, 220, 223 (Tex. 2011); *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence

on [his] defenses to the arbitration agreement." *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134–35 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (internal quotations omitted).

3.41.    Plaintiff has extensively pled fraud in the underlying transaction and Goodleap's entire financing scheme. As the Texas Supreme Court has observed, "[a] party to a written agreement . . . is charged as a matter of law with knowledge of its provisions . . . unless he can demonstrate that he was tricked into its execution." *Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 492 (Tex. 1978) (quoting Tex. Export Dev. Corp. v. Schleder, 519 S.W.2d 134, 139 (Tex. App.—Dallas 1974, no writ)); see also *Nexion Health at Omaha, Inc. v. Martin*, 06-10-00017-CV, 2010 WL 2690562, at *6 (Tex. App.—Texarkana July 7, 2010, no pet.) (mem. op.) (quoting Town N. Nat'l Bank).    Plaintiff only agreed to enter into this transaction because of express misrepresentations made to her regarding the performance and specifications of the system which Defendants failed to deliver on. Plaintiff was likewise misled regarding the business relationship between Goodleap and other Defendants to this transaction, including hidden kickback agreements and bonus arrangements. Plaintiff pled all of this extensively in her First Amended Petition. *See also e.g. Texas Energy Resources Innovation LLC v. Goodleap, LLC*, 4:23-CV-3079 (S.D. Tex. Aug. 21, 2023) [Dkt. 1], a complaint filed by one of Goodleap's installation company partners extensively alleging the unlawful bonus and incentive structures, attached hereto as **Appendix 1**.[10]

3.42.    Goodleap expressly misrepresented the finance charges associated with her loan agreement, rolling the actual cost of financing into an inflated "principal" price of the loan, as it has done throughout the nation and been prosecuted for in the State of Minnesota. Goodleap has hidden behind arbitration for far too long to keep these facts from being public record. Plaintiff has numerous whistleblower expert witnesses prepared to present evidence in this matter regarding

---

[10] This matter was never fully adjudictated following TERI's Suggestion of Bankruptcy being filed, after alleging Goodleap had withheld millions of dollars of hidden bonuses.

this fraudulent conduct. Had Goodleap made proper disclosures under the Truth in Lending Act, Plaintiff would not have executed any loan agreements with Goodleap.

3.43.    The Texas Arbitration Act also specifically provides that, "A court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable at the time the agreement was made." CIV. PRAC. § 171.022. **"**Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015); *In re Palm Harbor Homes*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding). Unconscionable contracts, whether relating to arbitration or not, are unenforceable under Texas law. *See In re Poly-America, L.P*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding).

3.44.    Courts consider the following factors when determining whether an arbitration provision is unconscionable: (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) whether the contract was illegal or against public policy; and (4) whether the contract is oppressive or unreasonable. *See Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.); *see also Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014); *Chubb Lloyds Ins. Co. of Tex. v. Andrew's Restoration, Inc*., 323 S.W.3d 564, 578 (Tex. App.—Dallas 2010, *aff'd in part & rev'd in part sub nom); Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817 (Tex. 2012). For there to be procedural unconscionability, "the circumstances surrounding the negotiations must be shocking." *Washburne v. Lynn Pinker Cox & Hurst, LLP*, 05-19-00716- CV, 2020 WL 4034978, at *6, (Tex. App.—Dallas July 17, 2020, no pet.) (mem. op.) (*quoting LeBlanc v. Lange*, 365 S.W.3d 70, 88 (Tex. App.—Houston [1st Dist.] 2011, no   pet.)).

3.45.    Here, Plaintiff was sold a solar system that presented no actual benefit to her, but instead significantly increased her monthly bills, thereby causing her to nearly default on her loan obligations. Goodleap therefore, approached Plaintiff and refinanced the ***entirety*** of Plaintiff's home under new loan agreements and sold those loan agreements off to other lenders who now service the loans. The solar debt has now been buried in the total cost of a new mortgage on Plaintiff's property. Plaintiff never had direct communication with Goodleap leading up to the initial loan agreement, dealing only with a door-to-door salesman (Defendant Phillips) who misrepresented numerous terms of the loan to her. Plaintiff was told that she could cancel the loan at any point up to installation, which was false. Plaintiff was not informed about numerous hidden fees, kickback agreements and bonus structures shared between Goodleap and the other Defendants and the principal of her loan was expressly misrepresented.

3.46.    Further, in light of the recent storms and flooding throughout Hidalgo County, Plaintiff's entire house was flooded and deemed non-repairable by FEMA and she is currently in the process of demolishing it. While this litigation has been ongoing for over a year, Defendants seek to have Plaintiff start this litigation from scratch in a ***third*** forum while she is weighing her options to declare bankruptcy after losing her entire home in the flood. Given the pendency of this litigation, and the unknown forum in which it will proceed, even Plaintiff's counsel is hard-pressed to advise Plaintiff regarding her options at this juncture in light of the claims of interest in her property made by the Defendants to this litigation. To force Plaintiff to incur new filing fees and arbitration costs and attorney's fees at this point is wholly unconscionable, especially when this matter was less than a month from trial in state court before the floods destroyed Plaintiff's home.

3.47.    The arbitration provisions of the Goodleap contract were never explained nor negotiated, were buried in the boilerplate loan agreement, limit Plaintiff's appellate rights, and

directly conflict with material terms in the TriSMART agreement (to the extent that may be considered by this Court). The provisions vary in the arbitral forum, the choice of law, which party is responsible for the costs of arbitration (and in what proportions), apply different forum rules, different appellate rights, and ultimately are irreconcilable with one another. Neither provision can reasonably be enforced without violating the other if this matter were to be ordered to a single arbitral proceeding. Likewise, the costs of two separate arbitrations would needlessly burden all parties involved and both proceedings would be dependent on the same pools of witnesses and evidence.

3.48.    Further, the Goodleap arbitration provision, by its express terms governs "all claims and disputes arising out of or relating to this Agreement." However, Plaintiff has raised numerous claims against Goodleap which expand far beyond the scope of the agreement. Importantly, Plaintiff's entire home was subsequently refinanced by Goodleap in a whole separate set of mortgage agreements which supersede this agreement. Plaintiff sues Goodleap for violations which occurred prior to and long after the entry of the Agreement, and for numerous things which extend beyond the four-corners of the contract.

3.49.    Arbitration generally does not extend to non-contractual claims unless the clause is extremely broad and the claims are inextricably tied to the agreement. *See e.g.*, *Fridl v. Cook,* 908 S.W.2d 507 (Tex.App.1995, writ dismissed w.o.j.), ("We do not see that this is a claim "arising out of or relating to" the contract. [The defendants] may have honored their contractual obligations in every respect, and yet be liable for fraudulently inducing [the plaintiff] to obtain business outside the contract so as to avoid full payment of commissions. We believe this claim is distinguishable from the fraud claim which this Court found subject to arbitration in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson,* 805 S.W.2d 38, 40 (Tex.App.—El Paso 1991, no writ). There, Merrill

Lynch could not be liable for fraud unless it had breached its obligations under the brokerage contract with Wilson, its client. Here, the fraud claim may be pursued even if no breach of the [ ] contract occurred.)

3.50.    Similarly, in *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380 (Tex.App.1993, writ denied), the court refused to compel arbitration of a tort claim that was legally independent of the contract containing the arbitration agreement. Again, the relevant arbitration clause provided for arbitration of any dispute "arising out of or relating to" the contract between the parties. *See id.* at 383. The plaintiff alleged that it had entered the contract with the defendant—involving a "Gardens" project—only because it had been promised another project—involving the "Landing." *See id.* at 391. The plaintiff advanced several tort claims against the defendant in connection with the Landing project. Holding that these claims were not arbitrable, the court observed that the plaintiff "need not even refer to the contracts involving the Gardens in order to maintain the claims regarding the Landing." *Id.* Thus, *Hearthshire* demonstrates that the test for whether a tort claim "relates to" a contract depends on whether the claim *could be* maintained without reference to the contract, not simply whether the complaint references the contract. This reasoning has been ratified by the Fifth Circuit. *See Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 234 (5th Cir. 1998).

3.51.    As with the TriSMART "Contract," neither Vivint nor Phillips should be permitted to tag along with Goodleap's Motion to Compel Arbitration on a provision which is not enforceable, particularly where Goodleap has opted to litigate this matter for over a year at substantial cost and prejudice to Plaintiff.

## IV. PRAYER

4.1    WHEREFORE, PREMISES CONSIDERED, Plaintiff Kassandra Elejarza respectfully requests that this Court deny Defendant Goodleap's Motions to Dismiss on the bases of lack of subject matter jurisdiction and venue. Plaintiff requests that all Defendants' Motions to Compel Arbitration be denied in their entirety. Plaintiff prays for all other relief at law or at equity to which she may be justly entitled.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent to all counsel of record via eService in accordance with the Federal Rules of Civil Procedure on the following date: June 5, 2025.

 */s/ Jason Palker*
Jason Palker