IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

# APPENDIX 1

| | |
|---|---|
| TEXAS ENERGY RESOURCES INNOVATION LLC, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 4:23-cv-3079 ) |
| vs. | ) **COMPLAINT AND** ) **JURY DEMAND** |
| GOODLEAP, LLC | ) ) |
| Defendant. | ) ) |

Plaintiff Texas Energy Resources Innovation LLC ("Texas Energy"), files its Original Complaint against Defendant GoodLeap, LLC ("GoodLeap") and, in support thereof, alleges as follows:

1. This dispute arises from GoodLeap's repeated breaches of an Agreement with Texas Energy, which prevented Texas Energy from continuing to fulfill its obligations under that Agreement. Shockingly, GoodLeap has now demanded payment from Texas Energy for failing to fulfill the obligations that GoodLeap prevented it from fulfilling. All the while, GoodLeap has repeatedly and fraudulently lied about the status of multiple loans covered by the Agreement, including unilaterally reinstating loans it had agreed to cancel—and in fact had canceled—and claiming that utility companies had granted permissions to operate when they had not yet done so, apparently in order to defraud GoodLeap's funding partners to whom it resells the loans.

**THE PARTIES**

2. Plaintiff Texas Energy is a Texas Limited Liability Company with an address at 2855 Mangum Road, Suite A562, Houston, Texas 77092. Texas Energy provides its customers

with a renewable energy solution through the installation of solar panels and assists those customers with loans and operation permits for the use of solar energy.

3. Defendant GoodLeap is a California Limited Liability Company with its principal place of business located at 8781 Sierra College Blvd., Roseville, California 95661, and may be served through its registered agent for service of process in the State of Texas, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201. GoodLeap is a home improvement lender that mainly provides loans and other financing options for the residential solar energy industry. It then works with banks to securitize such debt for sale to investors.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 28 U.S.C. §1332(a)(2), insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, Texas Energy is a citizen of Texas, GoodLeap is a citizen of California, and there is complete diversity between the parties.

5. Venue as to the Defendant is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because it conducts business in this judicial district, it entered into a contract with Texas Energy, a resident of this judicial district, and some of the acts committed by the Defendant occurred in this judicial district.

## FACTUAL ALLEGATIONS

**I.** **The Parties Enter a Contract.**

6. On or about July 15, 2022, Texas Energy and GoodLeap signed a contract entitled "GoodLeap Financing Program Agreement" ("Agreement"). Under the Agreement, GoodLeap agreed to provide financing to Texas Energy's customers, who had entered a contract with Texas Energy for the purchase and installation of residential solar systems at locations throughout the state, including in this judicial district. In exchange, Texas Energy agreed to pay certain loan

2

program fees to GoodLeap and to meet defined parameters regarding the installation of the solar power systems.

7. The Agreement provides that each customer loan would be funded by GoodLeap upon receipt of a completed and executed loan agreement by the applicable customer and once any applicable rescission period for such loan agreement had passed. Agreement § 3.3.1. After the loan was funded, Texas Energy would install the solar panels and notify GoodLeap that the installation was complete via a "Milestone Submission." Agreement § 3.5.2(b) and Exhibit B. Within one business day of such notification, GoodLeap was required to either approve or reject the Milestone Submission and notify Texas Energy whether it was approved or rejected. Agreement § 3.5.2(c). If a Milestone Submission was rejected, Texas Energy had the right to cure any identified deficiency and resubmit the notice that installation was complete. If a Milestone Submission was approved, GoodLeap was required to pay Texas Energy 100% of the contractually agreed upon payment for that solar project within two days ("Contractor Payment"), unless the project had been cancelled. Agreement § 3.5.3.

8. The Agreement also contains a Market Share Addendum, providing that GoodLeap will pay Texas Energy a monthly bonus, also referred to between the parties as a "rebate," based on the number of customer loan agreements completed for Texas Energy customers each month. This bonus was typically between sixty and eighty thousand dollars a month, based solely on the volume of customers Texas Energy brought to GoodLeap for funding. The exact amount of the monthly bonus was calculated by GoodLeap.

9. After installation of the solar panels, Texas Energy was required to obtain a permission to operate (PTO) from the relevant utility company for the customer's home. The Agreement initially required Texas Energy to do so within ninety days of installation and payment

by GoodLeap. Meeting this deadline was difficult to impossible, particularly for Texas customers, through no fault of Texas Energy. Utilities routinely fail to process and act on requests for PTOs in a timely manner. Accordingly, GoodLeap changed the parameters of the Agreement. Under the current terms, Texas Energy is required to obtain a PTO within 180 days of being paid by GoodLeap. If it does not, it must pay back, or "net fund," ten percent of the Contractor Payment to GoodLeap. And, if Texas Energy does not obtain the PTO within 300 days of GoodLeap's installation payment, Texas Energy must pay back the entire Contractor Payment. Once Texas Energy obtains the PTO, even outside these parameters, GoodLeap will repay Texas Energy the entirety or majority of amounts that it net funded.

## II. GoodLeap Fails To Pay Texas Energy As Required By The Contract.

10. Despite the requirement that it pay Texas Energy within two days of accepting the installation notification, GoodLeap repeatedly failed to do so by subjecting Texas Energy to a "call to fund" requirement. Under the Agreement, GoodLeap could only institute this requirement if Texas Energy no longer met GoodLeap's qualifications (such as financial, credit, or licensing requirements) or if Texas Energy was otherwise in breach of the Agreement. Agreement § 6.6. Neither of these conditions ever applied to Texas Energy, but GoodLeap unilaterally and without prior notice placed Texas Energy on "call to fund" status anyway. Such status meant that GoodLeap would refuse to release any payments to Texas Energy until GoodLeap had conducted a "welcome call" with the customer whose installation had been completed.

11. In other words, even though Texas Energy had completed the installation as required to be paid under the Agreement, had spent money out of its own pockets to perform that installation, and was otherwise in complete compliance with the Agreement, GoodLeap withheld the Contractor Payments it owed to Texas Energy, arguing payment could be made only if

4

GoodLeap had spoken to the customers on the phone. Then, GoodLeap would simply fail to call the customers or refuse to call them in a timely manner, holding up Texas Energy's funds for days, weeks, and even months.

12. Texas Energy repeatedly attempted to facilitate this additional, unwarranted requirement of welcome calls by calling GoodLeap with the customer, but the GoodLeap representatives regularly did not answer the phone. Texas Energy would also make sure the customer would be available during a specified time frame to receive a call, only for GoodLeap to fail to call during that period. Finally, Texas Energy suggested alternatives to a phone call, such as uploading pictures or signed statements confirming the installation. GoodLeap refused such suggestions.

13. The first time GoodLeap instituted the "call to fund" requirement, it lasted from January 19, 2023, until February 10, 2023. During this time, GoodLeap held all funds owed to Texas Energy, which amounted to over one million dollars. GoodLeap released these funds on February 10, and allowed Texas Energy to place new customers into loan agreements with GoodLeap beginning on March 2, 2023. Yet GoodLeap never removed the "call to fund" requirement for Texas Energy customers. Moreover, even though all installations completed between January 19 and February 10 were not funded until February 10, GoodLeap falsely manipulated the portal used to manage the Texas Energy loans to indicate that all such loans had been paid within one to two days of completion of installation, as required by the Agreement.

14. From March 2, 2023, until it stopped placing new customers into GoodLeap loans, Texas Energy was never taken off the "call to fund" system, which repeatedly delayed the Contractor Payments to which Texas Energy was entitled under the Agreement. GoodLeap declared that Texas Energy's bonus/rebate funds were also "frozen" under this policy and refused

5

to pay the bonuses Texas Energy had earned.

15. Texas Energy repeatedly asked GoodLeap to remove the call to fund requirement, warning GoodLeap that it was having to lay off workers, including the workers who helped make sure that PTOs were completed for customers on time. Yet GoodLeap still refused to abide by the Agreement, making Contractor Payments to Texas Energy either late or not at all, and refusing to give Texas Energy the bonus money it had earned for a period of approximately 3.5 months. When asked, GoodLeap repeatedly promised the funds would be released "tomorrow."

16. As of May 25, 2023, GoodLeap again owed Texas Energy over one million dollars for installations. By this point, GoodLeap was refusing to pay Texas Energy even after the calls to customers to confirm the installations had been completed. Texas Energy has received no payments from GoodLeap since May 17, 2023, when it received $8,900 out of the total amount it was owed. Eventually, Texas Energy stopped placing new customers with GoodLeap loans entirely. GoodLeap currently owes Texas Energy over one million dollars for installations completed by Texas Energy, as well as approximately a quarter of a million dollars in bonuses.

### III. GoodLeap Penalizes Texas Energy For GoodLeap's Failures.

17. As noted, GoodLeap's current policy requires Texas Energy to obtain PTOs for its customers within 180 days or else net fund ten percent of its payment under the contract back to GoodLeap. If Texas Energy does not obtain the PTO within 300 days, or if it does not obtain the PTO within 180 days for any customer who has fallen behind on payments to GoodLeap, Texas Energy must pay the entire amount of the money it had otherwise earned for installing the system back to GoodLeap.

18. Even though GoodLeap has been wrongfully withholding money from Texas Energy for months, forcing Texas Energy to absorb the out-of-pocket cost for several solar

installations, and even though GoodLeap knew Texas Energy had been unable to pay employees and was forced to lay off much of its staff due to GoodLeap's shenanigans with Texas Energy's money, GoodLeap is still requiring Texas Energy to meet the PTO requirements. Texas Energy continues to attempt to do so. But GoodLeap's improper record keeping has further complicated and delayed this task. For example, GoodLeap calculates the 180- and 300-day requirements not from the date Texas Energy actually received the Contractor Payment, as the Agreement requires, but from the date of <u>installation</u>.

19. Also, because GoodLeap has made false entries in its own contractor portal as to these payments, GoodLeap's recorded data reflecting the date the Contractor Payment was made to Texas Energy is often days or weeks earlier than the date Texas Energy in fact received the money. In this way, GoodLeap has manipulated its own data to claim that Texas Energy has missed deadlines for PTOs before those deadlines have passed.

20. On top of demanding payments under its falsified net funding records, GoodLeap has also demanded Texas Energy repay it for loans that have been canceled, despite Texas Energy's request that such amounts simply be offset against the seven-figure amount GoodLeap still owes to Texas Energy. Texas Energy does not dispute that Contractor Payments made by GoodLeap for loans that it later allows either the customer or Texas Energy to cancel should be returned to GoodLeap. In each of the twenty-two currently outstanding instances in which such cancellations have occurred, Texas Energy has already either placed the customer in a different loan or removed the panels it had previously installed, fully expecting to return the Contractor Payments for the canceled loans through an offset against amounts owed to it by GoodLeap.

21. GoodLeap, on the other hand, is again manipulating its own data with respect to these twenty-two cancelled loans. For example, as to four of the customers for whom cancellation

7

confirmations have been received, GoodLeap is still demanding that Texas Energy net fund ten percent of those loans because PTOs have not been obtained (for the customers that no longer exist). In other words, GoodLeap is demanding that Texas Energy refund GoodLeap 110 percent of the amount originally funded on some canceled loans.

22. More shockingly, without the consent of either the customers or Texas Energy, GoodLeap has quietly "reinstated" each of these twenty-two loans in the portal. The Agreement does not give GoodLeap the right to reactivate canceled loans. It is not yet clear whether GoodLeap is seeking, or intends to seek, loan payments from customers who have already agreed to a new loan with a different company or had their panels removed—which would cause additional trouble for both the customers and Texas Energy—in addition to demanding that Texas Energy pay back amounts for "canceled" loans that GoodLeap no longer considers canceled. But whatever its ultimate intentions, GoodLeap should not be allowed to demand repayment for canceled loans from Texas Energy while internally treating the loans as if they had never been canceled at all.

23. After receiving notifications that GoodLeap had begun to reinstate canceled loans (notifications GoodLeap later turned off), Texas Energy began to pay closer attention to other changes and entries GoodLeap was making in the portal. Recently, Texas Energy noticed that GoodLeap had suddenly labeled at least nine outstanding customers as "PTO complete" when, in fact, Texas Energy has not obtained those PTOs and has been charged net funding amounts for not yet doing so. And after checking with the relevant utility companies, Texas Energy learned that indeed, no PTO had been granted for the addresses in question.

24. As noted above, a major component of GoodLeap's business model is to repackage and securitize the customer loans by selling them to investors through its partnerships with various banks. On information and belief, the reason GoodLeap is manipulating the portal data is to

8

increase the perceived value of the repackaged loans. By claiming canceled loans are active and by claiming PTOs have been obtained, which makes the loans more likely to remain in good standing, GoodLeap is fraudulently obtaining higher prices from the banks and investors for the loans it sells to them.

25. Meanwhile, even GoodLeap does not seem to know how much money it believes it is owed by Texas Energy, having sent Texas Energy three different demand amounts in less than a month. But under any calculation of a monetary amount that might be owed to GoodLeap by Texas Energy for canceled loans and delayed PTOs, GoodLeap owes Texas Energy far more than that for Contractor Payments and bonus payments it has refused to make, and thus Texas Energy would be entitled to a setoff if it owed GoodLeap any money.

26. Here, though, no such setoff against the amounts owed to Texas Energy should be allowed for two reasons. First, GoodLeap's prior breaches excuse Texas Energy's delay in obtaining PTOs because GoodLeap's refusal to make timely payments to Texas Energy directly caused such delays. Second, Texas Energy should not have to pay back money received for canceled contracts that GoodLeap is treating as active loans unless and until GoodLeap clarifies the status of those loans to Texas Energy, to the consumers, and to GoodLeap's funding partners who may have purchased those loans.

27. Texas Energy's business and reputation is suffering due solely to GoodLeap's failure to meet its contractual obligations in a timely manner. GoodLeap should be ordered to immediately pay Texas Energy the entire amount it is owed, so that Texas Energy can continue to serve customers and provide renewable energy solutions through financing partners who, unlike GoodLeap, operate with integrity and fulfill their contractual obligations.

## COUNT I: BREACH OF CONTRACT

28. Texas Energy hereby restates and incorporates by reference Paragraphs 1 through 27 as though fully set forth herein.

29. Texas Energy fully performed its obligations pursuant to the Agreement prior to GoodLeap's breach.

30. GoodLeap was obligated under the Agreement to pay Texas Energy the Contractor Payments within two days of installation and to pay it earned bonuses monthly.

31. GoodLeap breached the Agreement by instituting a call to fund requirement, failing to make required payments, and reinstating canceled loans.

32. Texas Energy was excused from further performance under the Agreement by GoodLeap's breaches, which hindered Texas Energy's performance.

33. As a direct and proximate result of GoodLeap's breach of the Agreement, Texas Energy has suffered damages in an amount to be determined at trial.

34. Because GoodLeap's actions were oppressive, fraudulent, and malicious, Texas Energy is entitled to recover exemplary damages.

WHEREFORE, Texas Energy demands judgment against GoodLeap as follows:

(a) Awarding Texas Energy compensatory damages, including pre- and post-judgment interest;

(b) Awarding Texas Energy exemplary damages; and

(c) Granting Texas Energy such other and further relief as the Court may deem just and equitable.

## COUNT II: TORTIOUS INTERFERENCE WITH CONTRACT

35. Texas Energy hereby restates and incorporates by reference Paragraphs 1 through 34 as though fully set forth herein.

36. Texas Energy had contracts with its customers, and GoodLeap knew of the existence of such contracts.

37. By failing to make promised welcome calls, allowing loans to expire, and wrongfully reinstating loans for which it had confirmed cancellation, GoodLeap engaged in conduct that prevented or hindered performance of the customer contracts.

38. GoodLeap intended this result or knew it was likely.

39. As a direct, proximate, and substantial result of GoodLeap's interference, Texas Energy has suffered damages in an amount to be determined at trial.

40. Because GoodLeap's actions were oppressive, fraudulent, and malicious, Texas Energy is entitled to recover exemplary damages.

WHEREFORE, Texas Energy demands judgment against GoodLeap as follows:

(a) Awarding Texas Energy compensatory damages, including pre- and post-judgment interest;

(b) Awarding Texas Energy exemplary damages; and

(c) Granting Texas Energy such other and further relief as the Court may deem just and equitable.

## COUNT III: DECLARATORY JUDGMENT

41. Texas Energy hereby restates and incorporates by reference Paragraphs 1 through 40 as though fully set forth herein.

42. The Agreement does not give GoodLeap the right to reinstate customer loan contracts after cancellation of those contracts has been confirmed.

43. GoodLeap has confirmed the cancellation of twenty-two customer loan contracts and demanded repayment of amounts paid to Texas Energy for such contracts.

44. Texas Energy has treated those twenty-two contracts as cancelled.

45. GoodLeap has manipulated the information about those twenty-two contracts in the loan portal it maintains to show that such loans have been reinstated and are now active.

46. As such, there is an actual controversy between GoodLeap and Texas Energy regarding the status of these twenty-two contracts.

47. Texas Energy is thus entitled to have this Court make a declaration as to the rights, duties, and obligations of the parties with respect to the loan contracts in question.

WHEREFORE, Texas Energy demands judgment as follows:

(a) A declaration that the twenty-two loan contracts between GoodLeap and the consumers have been and remain permanently canceled; and

(b) Granting Texas Energy such other and further relief as the Court may deem just and equitable.

Dated: August 21, 2023

Respectfully submitted,

/s/ Elizabeth K. Stepp
Elizabeth K. Stepp
Texas Bar No. 00788467
eks@federal-lawyer.com
Paul P. Strickland
*Pro hac vice anticipated*
paul@federal-lawyer.com
**OBERHEIDEN P.C.**
440 Louisiana St., Suite 200
Houston, Texas 77002
(214) 334-7648 (Telephone)
(972) 559-3365 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**
**TEXAS ENERGY RESOURCES**
**INNOVATION LLC**