<p style="text-align:center; color:red;">Exhibit A</p>

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | RECORDS AFFIDAVIT |
| COUNTY OF HARRIS | § | |

---

## RECORDS AFFIDAVIT

---

My name is _GREG KELSCH_. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

1.  I am an employee of **TRISMART SOLAR, LLC** and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

2.  Attached are 21 pages of records. These are the original records of exact duplicates of the original records.

3.  It is the regular practice of **TRISMART SOLAR, LLC** to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the record.

4.  It is the regular practice of **TRISMART SOLAR, LLC** for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.

5.  It is the regular practice of **TRISMART SOLAR, LLC** to keep this type of record in the course of regularly conducted business activity.

6.  It is the regular practice of the business activity to make the records.

**AFFIANT**

My name is _____ GREG _____ Scott _____ Kersale _____,
                     (First)                 (Middle)               (Last)

my date of birth is ____ 11/18/1981 _____, and my address is

___ 29630 WOODSONS SHORE DR.  Spring _____ TX _____ 77386 ___
      (Street)                  (City)         (State)         (Zip Code)

and _____ USA _____.
         (Country)

I declare under penalty of perjury that the foregoing is true and correct.


Executed in ____ HARRIS ____ County, State of ____ Texas ____,

on the __ 20 __ day of ____ JUNE ____ 2025 ____,
                         (Month)          (Year)

_____
Declarant's Signature



**SOLAR PHOTOVOLTAIC AGREEMENT**

15200 E. Hardy Road
Houston, TX 77032
Phone: (888) 485-5551
Email: CustomerService@TriSMARTsolar.com
TECL: #32259

Customer Name: Kassandra Elejaraza
Customer Address: 1201 W Jasmine Ave      City: Alamo      State: TX      Zip: 78516
Customer Phone: (956) 566-1173
Energy Consultant: Caleb Phillips
Energy Consultant Email: Caleb.phillips@vivint.com

This Solar Photovoltaic Installation Agreement (this "**Agreement**") dated as of 02/26/2022      is made between TriSMART Solar, LLC ("**TriSMART**"), and you ("**Customer**") for the sale and installation of the solar photovoltaic system described below at your residence as described above (the "**Property**"). Each of TriSMART and Customer described herein as a "**Party**" and collectively as the "**Parties**." The Parties agree as follows:

**KEY TERMS AND CONDITIONS:**

**1. CONTRACT PRICE**: The Contract Price for the Project is $ 42,729.73 . The Contract Price is subject to final site survey and any amendments and change orders agreed to in writing by both parties or required for final approval. If you are paying cash for your Project, a 50% down payment is required with the balance due at install.

**2. DOWN PAYMENT**: $ 0.00 . UTILITY REBATE/ INCENTIVE: $ 0.00 .

**3. INITIAL LOAN AMOUNT**: The Initial Loan Balance for the Project is $ 42,729.73 .

**4. PV SYSTEM DESCRIPTION**: The Company will (i) design, procure, install, and commission a solar photovoltaic grid-tied system (at the system size noted below), or larger (the "**PV System**") and (ii) provide all project management, site supervision, electrical labor and assembly labor associated with the installation of the PV System. All materials will be new, meet the National Electric Code ("NEC"), UL, state, and local code requirements. TriSMART shall have the right to substitute any and/or all equipment and components of the PV System without the consent of the Customer, so long as the substituted equipment does not incur additional cost to the Project and does not cause reduction in the PV System's production guarantee by more than 5%. As currently configured the PV System includes the following:

| SYSTEM COMPONENT | QTY | ADDITIONAL NOTES: |
|---|---|---|
| SYSTEM SIZE (kW) | 10.44 | Company guarantees this size or greater. |
| ESTIMATED YEAR 1 PRODUCTION | | 13743 kWh |
| SOLAR PV MODULES | 29 | Silfab 360 SILFAB360 BLK |
| INVERTER | 29 | Enphase Microinverters |
| RACKING | | Included |
| ADDERS* | | |

*Depending on the adder type (such as landscaping, roof repairs etc.), it may or may not be considered part of your PV System for tax and warranty purposes and may require a separate contract (such as a roof replacement, battery, or generator), the PV System plus any adders listed above or approved through a change order shall be collectively referred to here as the "**Project**."

**SOLAR PHOTOVOLTAIC AGREEMENT**

5. **INSTALLATION TIMELINE:**

TriSMART will install the PV System within a reasonable amount of time after the date of this Agreement but no later than ten (10) months from the date of the last amendment to this Agreement. When TriSMART completes installation of the solar panels and the inverters(s), then substantial completion of the work to be performed under this Agreement shall have occurred:

**Approximate Start Date: 30-60 days from the date of the last amendment to this Agreement**
**Approximate Completion Date: 60-90 days from the date of the last amendment to this Agreement**

This performance timeline is an estimate and may be adjusted as provided in this Agreement or any subsequent amendments, including delays due to late payments or unforeseen conditions. Once TriSMART commences work on any portion of the Project, including but not limited to home improvements or roof repairs of any kind whatsoever, this Agreement shall become non-cancelable by Customer.

6. **PRICING**: The prices provided in this Agreement are valid for thirty (30) days from the date set forth above. If Customer does not sign this Agreement and return it to TriSMART on or before the thirtieth (30) day, TriSMART reserves the right to reject this Agreement unless you agree to our then-current pricing.

7. **NOTICE OF RIGHT TO CANCEL:**

   A. **CUSTOMER SHALL BE ALLOWED TO CANCEL THE CONTRACT WITHIN SEVEN (7) DAYS OF SIGNING THE ORIGINAL INSTALLATION AGREEMENT WITHOUT BEING CHARGED A FEE.**
   B. **IF THE CONTRACT IS CANCELED AFTER THE EXPIRATION OF SEVEN (7) DAYS AFTER CUSTOMER SIGNS THE ORIGINAL INSTALLATION AGREEMENT AND PRIOR TO THE INSTALLATION BEING SCHEDULED, CUSTOMER WILL BE CHARGED A $500 FEE.**
   C. **IF THE CONTRACT IS CANCELED AFTER THE INSTALLATION HAS BEEN SCHEDULED, AND PRIOR TO ANY COMPONENT OF THE SYSTEM BEING INSTALLED, CUSTOMER WILL BE CHARGED A $1,500.00 FEE.**
   D. **ALL SALES ARE FINAL AS SOON AS <u>ANY COMPONENT</u> OF THE SYSTEM IS INSTALLED OR <u>ANY WORK ON THE PROEJECT</u> HAS BEGUN AT THE PROPERTY.**

8. **ACKNOWLEDGEMENTS:**

**Customer acknowledges and understands that TriSMART Solar does not give tax advice regarding the federal solar investment tax credit, and that you should confirm your eligibility for the tax credit with your tax advisor. Further, Customer understands that the Federal Tax Incentive is currently 26% of the gross cost of my system (after local rebate if any), and is directly correlated with what Customer has paid or will pay in Federal Taxes and comes in the form of a tax credit. Customer is solely responsible for all applications, eligibility, analysis, tax processes and the like arising from or related to this Agreement and the PV System in whole or in part and acknowledges that TriSMART has given no tax advice to Customer arising from or related to this Agreement.**

Initial: _____*KE*_____

**Customer acknowledges and understands that the solar production, any energy efficiency, and post-solar utility bill projections that have been presented to Customer are only estimates based on historical data.**

Initial: _____*KE*_____

**Customer acknowledges and understands that in the event the Property consumes more electricity than Customer's PV System provides, then Customer will be billed for that electricity from Customer's utility provider.**

Initial: _____*KE*_____

**Customer acknowledges that Customer's energy consultant has not made any additional promises, representations, guarantees, or commitments outside of what is written in this Agreement.**

Initial: _____*KE*_____

**SOLAR PHOTOVOLTAIC AGREEMENT**

**Customer acknowledges that Customer has read and understands the cancellation policy as outlined in Section 7 of this Agreement and all notices contained in all Exhibits to this Agreement**

Initial: ___*KE*___

**Customer represents and warrants that it has full power and authority to enter into this Agreement and is the owner of record in the real property records of the county of the Property described herein.**

Initial: ___*KE*___

## 9. CHANGES, PERMITS, REBATES, INCENTIVES:

Customer acknowledges that the figures provided by TriSMART in this Agreement are estimates. These estimates are based on certain assumptions that may not be applicable based on the circumstances specific to Customer's Project. Actual system size and production will vary. TriSMART will use good faith reasonable efforts to provide reasonable figures in this Agreement. Following TriSMART's site inspection, we will amend this Agreement with revised figures. Customer agrees that TriSMART will not have any financial obligation to Customer regarding any difference between actual figures presented in any amendment to this Agreement and the estimated figures in the initial Agreement.

Any changes to the PV System will be documented in a written amendment to this Agreement signed by both Customer and TriSMART. Customer authorizes TriSMART to make corrections to the utility and incentive paperwork to conform to this Agreement or any amendments to this Agreement signed by both Customer and TriSMART.

Customer acknowledges that the PV System equipment and materials TriSMART will furnish and install are subject to cost increases. TriSMART will hold the contract price for thirty (30) days after the date of the last signed amendment to this Agreement. After thirty (30) days, if the cost of any equipment or material, for the PV System, rises by any amount due to circumstances beyond TriSMART's control, including but not limited to market price fluctuations or a site audit that reveals the need for additional materials or labor, then TriSMART shall have the right to present Customer with a change order for the PV System equipment's new price. Customer will have the right to accept or reject this new price and get your deposit, if any, back. If you do not accept the new price, TriSMART shall have the right to terminate this Agreement and any amendments and issue you a full refund, upon which the parties shall have no further obligations to one another.

TriSMART will obtain any necessary permits, at TriSMART's expense. TriSMART shall not be responsible for delays in work due to the actions of any permitting and regulatory agencies or their employees. Customer will pay to TriSMART or the taxing party as applicable for any taxes or assessments required by federal, state or local governments or related regulatory agencies or utilities. TriSMART will submit any HOA applications on your behalf and use all commercially reasonable efforts to obtain approval from your HOA. It is your responsibility to ensure that the application is approved and that the information provided for on **Exhibit B** ("HOA Notice") is accurate.

Depending on the state and utility district in which Customer resides, Customer may be eligible for various state and local rebates and incentives. If applicable, the rebate and incentive calculations TriSMART provides to Customer are estimates. These estimates are based on certain assumptions that may not be applicable based on the circumstances specific to Customer's Project. However, actual rebates and incentives are variable as eligibility requirements, funding availability and rates may change. In an effort to assist Customer in capturing a rebate, TriSMART will use good faith reasonable efforts to help Customer secure applicable rebates and incentives, but TriSMART shall have no financial obligation to Customer regarding actual rebate and incentive amounts received. Customer agrees to pay the contract price in full regardless of the actual amount of rebates and/or incentives Customer receives. Customer also directs TriSMART to apply any rebate or incentive, beyond those sold to TriSMART under the REC Agreement, which TriSMART obtains on behalf of the Customer, toward paying down the outstanding balance owed to TriSMART.

## 10. EXTRA WORK AND CHANGE ORDERS:

Extra work and change orders become part of the contract once the change order is prepared in writing and signed by the Parties prior to commencement of any work covered by the new change order. The order must describe (i) the scope of the extra work or change; (ii) the cost to be added or subtracted from this Agreement; and (iii) the effect the order will have

## SOLAR PHOTOVOLTAIC AGREEMENT

on the schedule of progress payments or the completion date. Notwithstanding this provision, TriSMART shall have the right to substitute any and/or all equipment and components of the PV System without the consent of the Customer, so long as the substituted equipment does not incur additional cost to the Project and does not cause reduction in the PV System's production guarantee by more than 5%. TriSMART's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based on legal or equitable remedies designed to prevent unjust enrichment.

## 11. **PROPERTY CONDITIONS**:

Customer is and remains solely responsible for the ongoing structural integrity of the location where the PV System is installed, including but not limited to any and all costs and expenses for structural, roofing or electrical modifications necessary to prepare the Property for the PV System. Customer agrees that TriSMART is not responsible for any known or unknown Property conditions which may need to be remedied in order properly install the PV System or which may be discovered upon commencement of installation of the PV System and to remedy the same at Customer's sole cost and expense.

## 12. **EXISTING CONDITIONS**:

TriSMART is not responsible and bears no liability for the performance of existing electrical equipment at the Property, including but not limited to the main electrical service panel, any major electrical devices, or any other fuses or similar devices.

## 13. **COST OR DELAY DUE TO UNFORESEEN CONDITIONS**:

TriSMART is not responsible for failures, delays or expenses related to unanticipated, unusual, or unforeseen conditions at the Property arising out of conditions beyond TriSMART's reasonable control, or as a result of unanticipated delays or changes in requirements by your local electric utility, or any other governmental or quasi-governmental entity exercising authority with regard to the Property (all of which shall be considered "**Force Majeure Events**"). Performance times under this Agreement will be considered extended for a period of time equivalent to the time lost due to such conditions. If TriSMART Solar discovers unforeseen conditions requiring additional cost, then TriSMART shall present such costs to Customer and get Customer's written approval before beginning or continuing performance. Failure to provide such approval may result in TriSMART exercising its termination rights pursuant to Section 16 of this Agreement.

## 14. **PROPERTY ACCESS**:

Customer grants TriSMART's employees, agents and contractors the right to reasonably access all of the Property as necessary for the purposes of (i) installing, constructing, operating, repairing, removing and replacing the PV System or making any additions to the PV System; (ii) installing, using and maintaining electric lines and inverters and meters, necessary to interconnect the PV System to your electric system at the Property and/or to the utility's electric distribution system; or (iii) taking any other action reasonably necessary in connection with the construction, installation, operation, maintenance, removal or repair of the PV System. TriSMART's right of access shall continue in place for so long as any warranty with regard to the PV System remains in effect.

## 15. **TITLE AND RISK OF LOSS**:

Title to the PV System shall transfer to Customer upon the complete installation of the PV System. After delivery of the PV System's equipment and materials to your Property, other than damage directly resulting from TriSMART's actions, you bear risk of loss to the PV System, including all losses occurring after the warranty period. TriSMART retains all TriSMART-owned intellectual property rights on any of the equipment installed in Customer's PV System including, but not limited to, patents, copyrights, trade secrets, trade dress, and trademarks. Customer hereby grants TriSMART a perpetual, non-exclusive license to any data generated by any monitoring system installed as part of the PV System.

## 16. **TERMINATION AND DEFAULT**:

TriSMART may terminate this Agreement, upon seven (7) days written notice, for any material or non-material breach, for any failure of Customer to agree to an appropriate change order, for any failure of Customer to pay TriSMART any amount due, for any bankruptcy or financial distress of Customer, or for any hindrance to TriSMART in the performance process.

**SOLAR PHOTOVOLTAIC AGREEMENT**

**17. REMEDIES UPON CUSTOMER'S BREACH:**

Without limiting any of TriSMART's other rights and remedies, upon any breach by Customer, including any failure of Customer to pay TriSMART any amount owed pursuant to this Agreement, TriSMART shall have the right to: (i) pursue a stop work order at the Property; (ii) prevent any more work from being done at the Property until the breach is cured and a bond is posted by the Customer for any amounts payable under this Agreement; (iii) recover all amounts due under this Agreement for services provided through the date of termination including interest (prime + 2% or such amount as allowed by law); (iv) remove any Project materials or equipment from the Property; (v) submit to credit reporting agencies (credit bureaus) negative credit reports that would be reflected on your credit record; and (vi) any other legal remedies including but not limited to mechanics' liens or similar remedies.

**18. TRISMARTS'S INSURANCE:**

a. Commercial General Liability Insurance (CGL). TriSMART carries commercial general liability insurance.

b. Workers' Compensation Insurance. TriSMART carries workers' compensation insurance for all employees.

**19. INDEMINIFICATION:**

Both Customer and TriSMART shall indemnify, defend and hold harmless the other and its employees, officers, directors, agents and assigns from any and all third-party claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages, liabilities, penalties, losses, obligations, demands and liens of any kind arising out of or relating to its failure to perform its obligations under this Agreement. Neither party shall be required to indemnify the other for its own negligence, willful misconduct or fraud.  Customer shall indemnify, defend and hold harmless TriSMART and its employees, officers, directors, agents and assigns from any and all claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages, liabilities, penalties, losses, obligations, and demands of any kind arising out of or relating to its failure to notify TriSMART of any dangerous condition on the Property including but not limited conditions from damaged or weakened rafters, roofing materials, or otherwise. Neither party shall be required to indemnify the other for its own negligence, willful misconduct or fraud.

**20. GOVERNING LAW:**

This Agreement shall be governed by the laws of the state where the Customer's Property is located.

**21. ENTIRE AGREEMENT, AMENDMENTS, AND SEVERABILITY:**

This Agreement contains the Parties' entire agreement regarding the Project. There are no other agreements regarding this Agreement, either written or spoken.  All exhibits referred to in and attached to this Agreement are incorporated in this Agreement by such reference and shall be deemed to be a part of it as if they had been fully set forth in it.

Any amendment to this Agreement must be in writing and signed by both Customer and TriSMART. Only an authorized employee of TriSMART may execute any amendment to this Agreement on behalf of TriSMART.

If any portion of this Agreement is determined to be unenforceable or invalid, the remaining provisions shall be enforced in accordance with their terms or shall be interpreted or re-written so as to make them enforceable. Provisions that should reasonably be considered to survive termination of this Agreement shall survive.

**22. ASSIGNMENT:**

TriSMART may assign or subcontract any of its rights or obligations under this Agreement to any successor, partner or purchaser.  Customer may not assign this Agreement absent the express written consent of TriSMART.

**23. WAIVER:**

Any delay or failure of a party to enforce any of the provisions of this Agreement, including but not limited to any remedies listed in this Agreement, or to require performance by the other party of any of the provisions of this Agreement, shall not

**SOLAR PHOTOVOLTAIC AGREEMENT**

be construed to (i) be a waiver of such provisions or a party's right to enforce those provisions; or (ii) affect the validity of this Agreement.

### 24. PRIVACY/PUBLICITY:

Customer grants TriSMART the right to publicly use, display, share, and advertise the photographic images, PV System details, price and any other non-personally identifying information of Customer's PV System. TriSMART shall not knowingly release any personally identifiable information about Customer or any data associating Customer with the Property. You may opt-out of these publicity rights by giving us written notice and mailing it to: TriSMART Solar, LLC, Attention: Publicity Opt Out, 15200 E. Hardy Road, Houston, TX, 77032.

### 25. LIMITED WARRANTY:

PV Systems installed receive the full and original Manufacturer Warranties. Additionally, TriSMART Solar acknowledges that Implied Warranties (Workmanship and Roof Penetration) exist in almost every state and are governed as such. TriSMART Solar agrees to abide by and honor these Implied Warranties.  All other warranties are contained in the "**Warranty Agreement**" attached hereto which contains Customer's power production guaranty as well as the following (all warranties related to this Agreement shall be governed by the Warranty Agreement):

Workmanship Warranty: TriSMART warrants that the PV System has been designed, engineered and constructed in accordance with applicable requirements and that it is capable of operating free of major defects in accordance with manufacturer specifications for twenty-five (25) years from the date of installation of the PV System.  This warranty is solely for the benefit of the Customer and is neither transferable nor assignable to any other person or entity.

Roof Penetration Warranty: With respect to all roof penetrations, TriSMART warrants that such roof penetrations shall be free from material defects in workmanship for twenty-five (25) years from the installation of the PV System.  This warranty is solely for the benefit of the Customer and is neither transferable nor assignable to any other person or entity.

CUSTOMER UNDERSTANDS THAT THE PROJECT IS WARRANTIED UNDER THE TERMS NOTED ABOVE, AND THAT THERE ARE NO OTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION, DESIGN, CAPACITY, SUITABILITY OR PERFORMANCE OF THE PROJECT OR ITS INSTALLATION. UPON RECEIPT OF PAYMENT IN FULL UNDER THIS AGREEMENT, ALL WARRANTIES THAT ARE PROVIDED BY MANUFACTURERS OF EQUIPMENT USED IN THE PROJECT WILL BE TRANSFERRED DIRECTLY TO CUSTOMER. CUSTOMER UNDERSTANDS THAT TRISMART SOLAR, LLC HAS NO RESPONSIBILITY WITH RESPECT TO SUCH WARRANTIES OTHER THAN TO TRANSFER THEM TO YOU.

### 26. LIMITATION OF LIABILITY:

    A. **No Consequential Damages**. EACH PARTY'S LIABILITY TO THE OTHER UNDER THIS AGREEMENT SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. WE BOTH AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

    B. **Actual Damages**. Neither party's liability to the other will exceed $1,000,000, including without limitation, damages to your Home or Property during the performance of the Project or resulting from the Project.

    EXCEPTING THE OTHER PROVISIONS UNDER THIS HEADING, TRISMART DISCLAIMS AND CUSTOMER WAIVES ALL EXPRESS OR IMPLIED WARRANTIES INCLUDING (WITHOUT LIMITATION) ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TRISMART SHALL NOT BE LIABLE TO CUSTOMER UNDER THIS WARRANTY IF AN ALLEGED DEFECT IN ANY WORK OR EQUIPMENT WAS CAUSED BY CUSTOMER'S OR ANY THIRD PERSON'S (FOR WHOM TRISMART IS NOT RESPONSIBLE AS PROVIDED HEREIN) MISUSE, NEGLECT, UNAUTHORIZED ATTEMPTS TO REPAIR, OR ANY OTHER CAUSE BEYOND THE RANGE OF THE INTENDED USE, OR BY ACCIDENT, FIRE, LIGHTNING, OR OTHER HAZARD.

SOLAR PHOTOVOLTAIC AGREEMENT

C. **Removal and Reinstallation**. We Will remove the panels form the roof in the event that a necessary roof repair is needed at the cost of $0.35/watt and will reinstall the panels for an additional $0.35/watt. This cost is only for the removal and reinstallation of panels and not the repair itself.  If only the removal of the panels is necessary the $0.35/watt charge is due in full up front. If panels are to be removed and reinstalled the total of $0.70/watt is due prior to the reinstallation of panels.

**27. <u>NOTICE REGARDING PERFORMANCE AND PAYMENT BONDS</u>:**

In some jurisdictions the owner or tenant in a home improvement contract has the right to require the contractor to have a performance and payment bond.  If the Property is located in a jurisdiction where this right exists, TriSMART will use all reasonable efforts to secure a performance and payment bond when so requested by the Customer.  TriSMART's inability to obtain a performance and payment bond shall not be deemed a breach of this Agreement and the other terms of this Agreement shall remain in full force and effect.

**28. <u>MOVING POLICY</u>:**

If Customer ever chooses to move from Customer's Property after the Solar PV system is installed, Customer has two options to choose from:

A.  Customer may leave the system and transfer the loan to the new home buyer(s).

B.  Customer may pay off Customer's loan at any time using the proceeds from the sale of Customer's home.

Customer is entitled to a completed copy of this Agreement, signed by both Customer and TriSMART, before any Project work may be started.

**AGREED AND EXECUTED:**

CUSTOMER PRINTED NAME:   <u>Kassandra Elejaraza</u>

CUSTOMER SIGNATURE:   <u>*Kassandra Elejaraza*</u>       DATE: <u>February 26, 2022</u>
636f20f50948b1a9d87a32cf0a5167e4e8c7a91f4526

CUSTOMER PRINTED NAME:   _____

CUSTOMER SIGNATURE:   _____       DATE: _____

**TRISMART SOLAR, LLC**
A Texas limited liability company

By:   _____       DATE: <u>02/26/2022</u>
       D. Joe Griffin, General Counsel

**SOLAR PHOTOVOLTAIC AGREEMENT**

**EXHIBIT A**

**NOTICE OF CANCELLATION**

Subject to the requirements of Section 7, and provided you have not allowed any component of the system to be installed or any work on the project to begin at the property, you may CANCEL this transaction, without any penalty or obligation, at any time up to seven (7) days after the signing of this Agreement.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by TriSMART of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to TriSMART at your Property, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of TriSMART regarding the return shipment of the goods at the TriSMART's expense and risk.

If you do make the goods available to TriSMART and TriSMART does not pick them up within twenty (20) days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to TriSMART, or if you agree to return the goods to TriSMART and fail to do so, then you remain liable for performance of all obligations under the Agreement.

To cancel this transaction, please email in a signed and dated copy of this Cancellation Notice, with the subject line containing the words "Notice of Cancellation" followed by your last name and address, to:

CustomerService@trismartsolar.com

**I HEREBY CANCEL THIS TRANSACTION**.

DATE: _____

CUSTOMER'S NAME:        _____
PROPERTY ADDRESS:        _____
                                            _____

SIGNATURE: _____

**SOLAR PHOTOVOLTAIC AGREEMENT**

**EXHIBIT B**

**HOA NOTICE**

We appreciating you choosing TriSMART Solar! If you live in a neighborhood which has an HOA, we may need to submit an application on your behalf to the HOA requesting approval of the PV System. Unfortunately, approval from an HOA can take some time, as they often only meet monthly or bi-weekly and members of the HOA board are volunteers. Because of this, an HOA application can take up to 45 days. However, if you live in an HOA, you are protected by state laws; an HOA cannot refuse your right to have solar installed on your home.

In light of the laws protecting your right to have solar installed on your home, TriSMART may complete the installation of your solar system prior to receiving a formal approval from your HOA. This letter is to acknowledge that you understand your rights of solar installation. If an HOA requests any modifications or changes to your solar system or requires a fee to be paid, TriSMART will comply at no additional cost to you.

Please fill out the following information so that we may expedite approval through your HOA (if you do not have an HOA please put "NA"):

**Neighborhood Name**: _____

**Name of the HOA**: _____

    Phone Number: _____
    Email: _____
    Website: _____

**Management Company**: _____

    Phone Number: _____
    Email: _____
    Website: _____

**SOLAR PHOTOVOLTAIC AGREEMENT**

**EXHIBIT C**

**GENERATOR ADDER NOTICE**

If a generator is indicated in the adder section of this Agreement, this Exhibit C shows you what is included in the quoted price of the generator and what is not included and will require an additional fee. Generators are not part of your PV System for warranty purposes and have no warranties outside of this Exhibit C. In some instances, generators may not be financed or may require a separate financing agreement. Your generator comes with a limited five (5) year warranty from the manufacturer. We encourage you register your generator with the manufacturer once it is installed, please visit generac.com to register and retrieve warranty information regarding your product. We offer an additional ninety (90) day labor installation warranty on the generator from the date it was installed as well.

The following items are included with the installation of your generator:

- 22kw Generac Generator and Automatic Transfer Switch
- Install up to 70 feet of wires from 200 amp transfer switch to disconnect, generator and panel
- Install up to 70 feet of gas line from gas meter to generator and add shut off valve and regulator
- Deliver and install 22kw air cooled generator and remote wires
- Set up wifi and generator settings to Generac website
- Program time for generator test run to be done weekly
- Provide 3" prefabricated pad
- 5 year standard Generac Warranty will be triggered when the generator is registered at the time of installation.
- 90 day installation warranty
- Client information and basic training provided if the client is home at the time of install.

The following items will incur an additional fee beyond the contract price of your generator:

- If electrical lines exceed 70 feet, a $13 per foot charge will be assessed
- If gas lines exceed 70 feet, a $11 per foot charge will be assessed
- Permitting fees additional, if necessary ($300)
- If a generator specialist site visit is needed, a Site visit fee of $195 per occurrence will be charged

TRISMART shall not be liable (and you agree to hold TRISMART harmless) for any consequential, incidental, indirect, special, exemplary or punitive damages arising out of or related to the sale and installation of the generator, regardless of the form of action and regardless of whether TRISMART has been informed of the possibility of such damages. TRISMART's liability shall be limited to the ninety (90) day labor installation warranty and has no liability whatsoever regarding the product. Customer agrees to look solely to the manufacturer for any issues, defects, problems or the like regarding the generator and any and all of its functions and components.

IF YOU ARE PAYING CASH FOR YOUR GENERATOR SEE REQUIRED PAYMENTS BELOW:

Upfront Payment (50%):      $ 0.00
Amount Due at Install:       $ 42,729.73

**SOLAR PHOTOVOLTAIC AGREEMENT**

**EXHIBIT D**

**BATTERY ADDER NOTICE**

If a battery (such as the Tesla Powerwall) is indicated in the adder section of this Agreement, this Exhibit D shows you what terms apply to said battery. The manufacturer and model of the battery must be noted in the adder section of this Agreement.  Batteries are not part of your PV System for warranty purposes and have no warranties outside of this Exhibit D.  In some instances, batteries may not be financed or may require a separate financing agreement. Your battery comes with a limited ten (10) year warranty from the manufacturer on defects and energy capacity. TRISMART has twelve (12) months, or a reasonable time, to install your battery.  We strongly encourage you to register your battery with the manufacturer and keep it connected to the internet once it is installed so that you can keep your warranty in force and receive firmware updates and upgrades from the manufacturer.  We offer an additional ninety (90) day labor installation warranty on the battery from the date it is installed.  For Tesla Powerwall, please visit tesla.com to find the most up to date warranty information regarding your product.

TRISMART shall not be liable (and you agree to hold TRISMART harmless) for any consequential, incidental, indirect, special, exemplary or punitive damages arising out of or related to the sale and installation of the battery, regardless of the form of action and regardless of whether TRISMART has been informed of the possibility of such damages.  TRISMART's liability shall be limited to the ninety (90) day labor installation warranty and has no liability whatsoever regarding the product.  Customer agrees to look solely to the manufacturer for any issues, defects, problems or the like regarding the battery and its hardware, software, firmware and any and all of its functions. Unconventional installations may require a change order and incur an additional fee beyond what is noted here.

**THE FOLLOWING PAYMENTS NOTED BELOW ARE REQUIRED IN EACH SITUATION:**

| CASH – BATTERY ONLY | CASH – BATTERY + PV | FINANCING – BATTERY + PV |
|---|---|---|
| 50% Upfront: 0.00<br>50% at Install: 42,729.73 | 100% payment at the time your PV System is installed, even if the battery has not been installed yet. | First payment due 2 months following installation of your PV system, even if the battery has not been installed yet. |

Energy Storage Systems (ESS) otherwise called home backup batteries are designed to store a fixed amount of energy for a variety of uses. The most important use to the majority of our customers is to supply back-up power to critical electric loads in the event of a power outage. The duration of off-grid battery function is dependent on the predetermined battery capacity and the rate at which the home consumes that capacity. Like any other battery system, once a home backup battery is fully discharged, it will stop functioning and need to be recharged.

It is recommended that homeowners learn to live within their means during a power outage to keep their battery operating for the most important electrical needs. Even if the battery bank is capable of running bigger electric loads such as pump motors, electric heat elements, microwaves, and AC units, it is not recommended as these would quickly drain your battery supply and leave you in the dark. Typically, if you limit your off grid use to just lighting, refrigeration, small appliances, and gas appliances, the battery system can keep you powered indefinitely through the day/night cycles where daytime solar output powers your house & charges your battery, and the energy stored carries you through the night.

Every household uses energy differently. We recommend all of our battery storage customers get a feel for their system's off-grid function prior to a grid failure event. This is very easy to simulate and observe through your energy monitoring app. This way your family can learn how to make the most of the system and have the best experience possible.

Further education on your system will be provided once it is installed, and our team is always available for any questions you have.  Thank you for trusting us with your Solar + Battery Storage project. We look forward to providing you with a world class experience.

WARRANTY AGREEMENT



| BUYER NAME: | Kassandra Elejaraza | CO-BUYER NAME (IF ANY) | |
|---|---|---|---|
| INSTALLATION LOCATION: | 1201 W Jasmine Ave Alamo, TX 78516 | CONTRACT ID | N/A |

Regulated by The Texas Department of Licensing and Regulation P. O. Box 12157, Austin, Texas 78711
1-800-803-9202, 512-463-6599; Website: www.tdlr.texas.gov

## I.  Introduction

The Buyer and any Co-Buyer named above (hereinafter individually and jointly referred to as "Customer"), by signing below, are entering into this Warranty Agreement (the "Warranty Agreement") with TriSMART Solar, LLC ("TriSMART").

Per the terms of this Warranty Agreement (which is entered into in connection with the Home Improvement Agreement), TriSMART, or agents or contractors or subcontractors appointed by TriSMART, shall provide certain warranties for the Solar PV System ('System') Customer is purchasing from the TriSMART (collectively, the "Services"). This Warranty Agreement begins on the date the System is connected to the electrical grid (the "Interconnection Date") and shall end twenty-five (25) years after Customer's first required monthly payment due date under the related Loan and Security Agreement Customer is entering into with the Creditor (the "Warranty Term").

The System will be located at the Installation Location listed above (the "Customer's Property"), which shall include the residence, all landscaping, and all applicable accessories, mounting hardware, and attachments, as described more fully in the Residential Home Improvement Agreement ("Home Improvement Agreement") between Customer and TriSMART.

## II.  Limited Warranties

A.    Solar PV System Warranty. During the entire Warranty Term, under normal use and service conditions, the System will be free from defects in workmanship or defects in, or a breakdown of, materials or components.

B.    Roof Warranty. If Customer's roof is penetrated during the installation of the System, TriSMART warrants roof damage caused by the sole acts or omissions of TriSMART or our contractors. TriSMART warrants that such roof penetrations shall be free from material defects in workmanship for twenty-five (25) years from the installation of the System.

C.    Repair Promise. During the entire Warranty Term, TriSMART, through its contractors or subcontractors, will honor the Solar PV System Warranty and will cause the repair or replacement of any defective part, material or component or correction of any defective workmanship, at no cost or expense to Customer (including all labor costs), when Customer submits a valid claim to TriSMART under this limited warranty, the Repair Promise. If our contractors damage the Customer's Property, or Customer's belongings, TriSMART will cause its contractors to repair the damage they cause or pay Customer for the damage as described below in Section 4. Seller may use new or reconditioned parts when making repairs or replacements. TriSMART may also, at no additional cost to Customer, upgrade or add to any part of the Solar PV System to ensure that it

1

performs according to the guarantees set forth in this Warranty Agreement. Cosmetic repairs that do not involve safety or performance shall be made at TriSMART's discretion.

D.     <u>Warranty Length.</u> The warranties in Sections 2 above will start on the Interconnection Date and continue through the entire Term of 25 years.

E.     <u>Power Production Guarantee.</u> TriSMART guarantees that during the Warranty Term the System will generate the guaranteed annual kilowatt-hours ("Guaranteed Annual kWh") in the table set forth in Exhibit A.

        If at the end of the first thirty-six (36) month anniversary of Customer's first required monthly payment due date under the Loan and Security Agreement and each successive twelve (12) month anniversary thereafter the cumulative Actual Annual kilowatt-hours (defined below) generated by the System is less than the cumulative Guaranteed Annual kilowatt-hours, then TriSMART will credit Customer's account equal to the difference between the cumulative Actual Annual kilowatt-hours and the cumulative Guaranteed Annual kilowatt-hours multiplied by the Guaranteed Energy Price per kilowatt-hour (defined below). TriSMART will credit Customer's account within thirty (30) days of the end of the calendar year. Customer's cumulative Actual Annual kilowatt-hour is dependent on a shading percentage of 1.9% on Customer's Property. If this shading percentage increases, Customer's Guaranteed Actual kilowatt-hour will be reduced proportionately.

        For example, if the first thirty-six (36) month period commences on October 10, 2010 and ends on October 9, 2013, and the energy the System was supposed to generate is less than the energy the System was guaranteed to generate during such thirty-six (36) month period, TriSMART will credit Customer's account the difference between the Actual Annual kilowatt-hours and the Guaranteed Annual kilowatt-hours multiplied by the Guaranteed Energy Price per kilowatt-hour within thirty (30) days after December 31, 2013.

        If at the end of the first thirty-six (36) month anniversary of Customer's first required monthly payment due date under the Loan and Security Agreement and each successive twelve

(12) month anniversary thereafter the Actual Annual kilowatt-hours is greater than the Guaranteed Annual kilowatt-hours during any twelve (12) month period, this surplus will be carried over and will be used to offset any deficits that may occur in the future. If Customer's System produces more energy than the Guaranteed Annual kilowatt-hours then this additional energy is Customer's at no additional cost.

        "<u>Actual Annual kilowatt-hours</u>" means the AC electricity produced by Customer's System in kilowatt-hours measured and recorded by TriSMART during each successive twelve (12) month anniversary of Customer's first monthly payment due date plus any carry over. To measure the Actual Annual kilowatt-hours TriSMART will use the Power Monitor or to the extent such services are not available, TriSMART will estimate the Actual Annual kilowatt-hours by reasonable means.

        "<u>Guaranteed Energy Price per kilowatt-hour</u>" means $0.12 per kilowatt-hour.

        **THE PRODUCTION GUARANTEE WILL BE NULL AND VOID IF THE CUSTOMER FAILS TO CUT AND/OR TRIM TREES ON THE CUSTOMER'S PROPERTY, AS INDICATED IN THE TREE SHADE REPORT.  IF TRISMART FAILS TO SEND CUSTOMER A TREE SHADE REPORT, THE CUSTOMER'S FAILURE TO CUT AND/OR TRIM TREES SHALL HAVE NO EFFECT ON THE PRODUCTION GUARANTEE.**

F.     <u>Power Monitor.</u> During the Warranty Term, TriSMART will provide Customer at no additional cost our Power Monitor service ("Power Monitor"). If Customer's System is not operating within normal ranges, the Power Monitor will alert TriSMART and TriSMART will remedy any material issues promptly.

        The Power Monitor requires access to cellular networks in order to operate. If cellular service is not available then TriSMART will not be able to monitor the System to provide Customer with Customer's power production guarantee as described in paragraph II(E) above. To continue Customer's power production guarantee under this Warranty

Agreement, Customer will be required to provide TriSMART with annual production information from Customer's inverter; or TriSMART, in our sole discretion, will estimate annual production. In connection with any such estimated production by TriSMART, TriSMART will make commercially reasonable methods to estimate the missing kilowatt-hours based on utility bills or other available information and such estimate will be included in the calculations under this Section II for such period. In the event that no such information is reasonably accessible, TriSMART will make the adjustment based on the original kilowatt-hours expectation attributable to such period.

G.    <u>Claims Process.</u> Customer can make a claim by emailing TriSMART at: CustomerService@trismartsolar.com

**Transferable Limited Warranty.** TriSMART will accept and honor any valid and properly submitted Warranty claim made during the Term by any person who purchases or otherwise acquires the Solar PV System from Customer.

H.    <u>Exclusions and Disclaimer.</u> The warranties and guarantees provided in this Warranty Agreement do not apply to any lost power production or any repair, replacement or correction required due to any of the following:

i.    Someone other than TriSMART or its approved service providers installed, removed, re-installed or repaired the System;

ii.    Destruction or damage to the System or its ability to safely produce power not caused by TriSMART or its approved service providers while servicing the System (e.g. if a tree falls on the System TriSMART will not repay Customer for power it did not produce) (see also Section IX below);

iii.    Customer's failure to perform or breach of Customer's obligations under the Loan and Security Agreement (e.g. Customer modifies or alters the System).

iv.    Customer's failure to perform or breach of this Warranty Agreement, including Customer being unavailable to provide access or assistance to TriSMART in diagnosing or repairing a problem, Customer's failure to maintain the System as stated in the Solar Service Guide, Customer's failure to provide warranty information or Customer's failure to provide assistance in obtaining any manufacturer's warranties;

v.    Any Force Majeure Event (as defined in Section V below);

vi.    Shading from foliage that is new growth or is not kept trimmed to its appearance on the date the System was installed;

vii.    Any System failure or loss of production not caused by a defect to the System (e.g. the System is not producing power because it has been removed to make roof repairs or Customer required TriSMART to locate the inverter in a non- shaded area);

viii.    Theft of the System (e.g. if the System is stolen, TriSMART will not repay Customer for the power it did not produce) (see also Section IX below);

ix.    A power or voltage surge caused by someone other than TriSMART, including a grid supply voltage outside of the standard range specified by the local utility or the System specifications or as a result of a local power outage or curtailment; and

x.    A change in usage of the Customer's Property or any buildings at or near Customer's Property that may affect insolation without TriSMART's prior written approval.

This Limited Warranty gives Customer specific legal rights, which are limited to those granted under the laws of the State of Texas.

This Limited Warranty does not warrant any specific electrical performance of the System, other than that described above.

THE LIMITED WARRANTIES DESCRIBED IN SECTION II ARE THE ONLY EXPRESS WARRANTIES MADE BY TRISMART WITH RESPECT TO THE SYSTEM. TRISMART HEREBY DISCLAIMS, AND ANY BENEFICIARY OF THIS LIMITED WARRANTY HEREBY WAIVES, ANY WARRANTY WITH RESPECT TO ANY COST SAVINGS FROM USING THE SYSTEM. WITHOUT LIMITING THE FOREGOING, TO THE FULL EXTENT PERMITTED BY STATE LAW, THERE ARE NO OTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION, DESIGN, CAPACITY, SUITABILITY OR PERFORMANCE OF THE SYSTEM OR ITS INSTALLATION. SOME STATES DO NOT ALLOW SUCH LIMITATIONS, SO THE ABOVE LIMITATIONS MAY NOT APPLY TO CUSTOMER.

### III.  <u>Customer's Additional Obligations During the Warranty Term.</u>

Customer grants TriSMART and its employees, agents and contractors the right to reasonably access all of Customer's Property as necessary for the purposes of compliance with the terms and conditions of this Warranty Agreement.

If Customer wants to make any repairs or improvements to Customer's Property that could interfere with the System, Customer may only remove and replace the System pursuant to Section IV of this Warranty Agreement.

During the warranty period Customer agrees:

a) To use the System carefully, keep it in good repair, and use reasonable efforts to avoid damage to the System;

b) Follow all safety warnings and installation and operation instructions included in the documentation provided to Customer for the System;

c) To have the System repaired only pursuant to this Warranty Agreement and reasonably cooperate when repairs are being made;

d) To perform Customer's obligations under this Warranty Agreement and not take or fail to take any action that would cause this Warranty Agreement to be canceled or terminated, disqualify the System from continuing eligibility for maintenance, repairs, monitoring or other services available under this Warranty Agreement, or disqualify or void any equipment or manufacturer's warranty applicable to any component of the System;

e) To keep trees, bushes and hedges trimmed so that the System receives as much sunlight as it did when TriSMART installed it;

f) To keep the panels and modules clean, and protect the System from animals and infestation;

g) To not modify Customer's Property in a way that shades the System;

h) To be responsible for any conditions at Customer's Property that affect the installation and operation of the System (e.g. not blocking access to the roof or removing a tree that is in the way);

i) To be responsible for the structural integrity of Customer's Property where the System is installed, including structural or electrical modifications necessary to prepare Customer's Property and roof for the System. Customer agrees that TriSMART is not responsible for any known or unknown property conditions;

j) To not remove any markings or identification tags on the System;

k) To permit TriSMART, after TriSMART gives Customer reasonable notice, to inspect the System for proper operation as TriSMART reasonably determines is necessary;

l)  To use the System primarily for personal, family or household purposes, but not to heat a swimming pool;

m)  To not do anything, permit or allow to exist any condition or circumstance that would cause the System not to operate as intended at the Customer's Property;

n)  To not use the System for any unlawful purpose;

o)  To notify TriSMART if Customer thinks the System is damaged, appears unsafe or is stolen, and prior to changing Customer's power supplier;

p)  To obtain TriSMART's written permission before making changes to the System;

q)  To not sell, transfer, or lease the System except as permitted under the Loan and Security Agreement, or use it as security for a loan from another creditor;

r)  Not to allow any other security interest or lien, other than that permitted under the Loan and Security Agreement, to attach to the System, whether by Customer's actions, inactions, or operation of law;

s)  To give TriSMART written notice of any third party's claim to the System (including any part of the System) or any third party's attempt to repossess, foreclose on, or sell the System (including any part of the System), promptly after Customer first discovers or has reason to suspect such a third-party claim or attempt;

t)  To permit TriSMART access to data regarding Customer's energy consumption from Customer's electric use or from electronic usage data storage sites and execute a third-party access agreement for this purpose where required;

u)  To return any documents sent to Customer by TriSMART for signature (like incentive claim forms) within five (5) business days of receiving them; and

v)  To procure and maintain adequate insurance coverage for the System. Customer may obtain this insurance from anyone Customer wants.

## IV.  <u>TriSMART's Standards</u>

For the purpose of this Warranty Agreement the standards for TriSMART's performance will be: (a) normal professional standards of performance within the solar photovoltaic power generation industry in the relevant market; and (b) Prudent Electrical Practices. "Prudent Electrical Practices" means those practices, as changed from time to time, that are engaged in or approved by a significant portion of the solar power electrical generation industry operating in the United States to operate electric equipment lawfully and with reasonable safety, dependability, efficiency and economy.

## V.  <u>System Repairs or Removal and Information and Data</u>

A.  <u>Repairs and Service Calls.</u>  Customer agrees that if (a) the System needs any repairs that are not the responsibility of TriSMART under this Warranty Agreement, (b) the System needs to be removed and reinstalled to facilitate remodeling of Customer's Property, Customer will have TriSMART, or its approved service providers, at Customer's expense, $0.35/watt to remove panels and an additional $0.35/watt to re-install such repairs, removal and reinstallation on a time and materials basis.

Customer's first service call during the warranty period will be at no charge. Any Service calls thereafter during the warranty period will have a $100 trip charge.

B.  <u>Information/Data.</u>  Customer agrees that TriSMART, or agents or contractors or subcontractors appointed by TriSMART, are entitled to collect and retain information and data regarding the System including but not limited to data and equipment performance, and that TriSMART is entitled to share such information with TriSMART. Customer agrees that

TriSMART owns all information and data regarding the System that is collected.

## VI.    Force Majeure

If TriSMART is unable to perform all or some of its obligations under this Warranty Agreement because of a Force Majeure Event, TriSMART will be excused from whatever performance is affected by the Force Majeure Event, provided that:

a)   TriSMART, as soon as is reasonably practical, gives Customer notice describing the Force Majeure Event;

b)   TriSMART's suspension of its obligations is of no greater scope and of no longer duration than is required by the Force Majeure Event (i.e. when a Force Majeure Event is over, TriSMART will make repairs); and

c)   No TriSMART obligation that arose before the Force Majeure Event that could and should have been fully performed before such Force Majeure Event is excused as a result of such Force Majeure Event.

"Force Majeure Event" means any event, condition or circumstance beyond the control of and not caused by TriSMART's fault or negligence. It shall include, without limitation, failure or interruption of the production, delivery or acceptance of power due to: an act of god; war (declared or undeclared); sabotage; riot; insurrection; civil unrest or disturbance; military or guerilla action; terrorism; economic sanction or embargo; civil strike, work stoppage, slow-down, or lock-out; explosion; fire; earthquake; abnormal weather condition or actions of the elements; hurricane; flood; lightning; wind; drought; global or national pandemic; the binding order of any governmental authority (provided that such order has been resisted in good faith by all reasonable legal means);  the failure to act on the part of any governmental authority (provided that such action has been timely requested and diligently pursued); unavailability of power from the utility grid, equipment, supplies or products

(but not to the extent that any such availability of any of the foregoing results from TriSMART's failure to have exercised reasonable diligence); power or voltage surge caused by someone other than TriSMART including a grid supply voltage outside of the standard range specified by Customer's utility; and failure of equipment not utilized by TriSMART  or under its control.

## VII.    Limitations on Liability

A.       No Consequential Damages. CUSTOMER MAY ONLY RECOVER DIRECT DAMAGES PURSUANT TO SECTIONS II, SUBJECT TO VI, UNDER THIS WARRANTY AGREEMENT, AND IN NO EVENT SHALL TRISMART OR ITS AGENTS OR CONTRACTORS BE LIABLE TO CUSTOMER OR CUSTOMER'S ASSIGNS FOR SPECIAL, INDIRECT, PUNITIVE, EXEMPLARY, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO CUSTOMER.

B.       Limitation of Duration of Implied Warranties. IN THE EVENT THAT ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY ARISING UNDER STATE LAW CANNOT BE WAIVED, SUCH WARRANTIES SHALL IN NO EVENT EXTEND PAST THE EXPIRATION OF THE WARRANTY TERM PROVIDED IN THIS WARRANTY AGREEMENT. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO CUSTOMER.

C.       Limit of Liability. Notwithstanding any other provision of this Warranty Agreement to the contrary, TriSMART's total liability arising out of or relating to this Warranty Agreement for damages to Customer's Property, and belongings shall in no event exceed five hundred thousand dollars ($500,000).

## VIII.    Notices

**To TriSMART.** All notices under this Warranty Agreement shall be made to TriSMART at the address in this Warranty Agreement or any subsequent addresses provided to Customer by TriSMART.

**To Buyer.** All notices under this Warranty Agreement shall be made to Buyer at the address in this Warranty Agreement, through the customer portal, or any subsequent address Customer gives TriSMART for this Warranty Agreement.

## IX.    Assignment and Transfer of This Limited Warranty

TriSMART may assign its rights or obligations under this Warranty Agreement to a third party without Customer's consent, provided that any assignment of TriSMART's obligations under this Warranty Agreement shall be to a party professionally and financially qualified to perform such obligation. This Warranty Agreement protects only the person who owns the System. Customer's rights and obligations under this Warranty Agreement will be automatically transferred to any person who purchases or otherwise acquires the System from Customer, to the extent allowed under the Loan and Security Agreement.

## X.    Early Termination

Notwithstanding any other provision of is Warranty Agreement, this Warranty Agreement shall automatically terminate if the System is completely destroyed, stolen and not recovered within ten (10) days, or damaged beyond repair as the direct result of an accident, natural disaster,
act of God, or similar catastrophic event that is not caused, not materially aggravated, or not substantially worsened by the negligence or willful misconduct of Customer, or Customer's agents, contractors (other than TriSMART), or representatives (a "Total Loss" of the System).

## XI.    Arbitration

PLEASE READ THIS SECTION CAREFULLY. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY TRIAL AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.

Customer and TriSMART agree that any dispute, claim or disagreement between Customer and TriSMART shall be resolved exclusively by arbitration except as specifically provided below.

The Federal Arbitration Act, rather than any state arbitration law, applies to this arbitration agreement.

The arbitration, including the selection of the arbitrator, will be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules by a single neutral arbitrator.  Either party may initiate the arbitration process by filing the necessary forms with the AAA. To learn more about arbitration before the AAA, Customer can review materials available at www.adr.org. The arbitration shall be held in the location that is most convenient to Customer's Property. If the AAA is unavailable to administer the dispute, then the arbitration, including the selection of the arbitrator, will be administered by JAMS, under its Streamlined Arbitration Rules, by a single neutral arbitrator agreed on by the parties within thirty (30) days of the commencement of the arbitration. If JAMS is not available either, then the parties shall select another recognized arbitration administrator which can offer a location for arbitration that is close to Customer's Property.

If Customer initiates the arbitration, Customer will be required to pay the first $125 of any filing fee.  TriSMART will pay any filing fees in excess of $125 and TriSMART will pay all of the arbitration fees and costs. If TriSMART initiates the arbitration, TriSMART will pay all of the filing fees and all of the arbitration fees and costs. Customer and TriSMART will each bear all of their respective attorney's fees, witness fees, and costs unless the arbitrator decides otherwise.

The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court could order or grant under this Warranty Agreement. The arbitrator, however, is not authorized to change or alter the terms of this Warranty Agreement or to make any award that would extend to any transaction other than the Customer's transaction. All statutes of limitation that are applicable to any dispute shall apply to any arbitration between Customer and TriSMART. The arbitrator will issue a decision or award in writing, briefly stating the essential findings of fact and conclusions of law.

Only disputes involving Customer and TriSMART may be addressed in the arbitration. Disputes must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party to the dispute. If Customer and TriSMART arbitrate a dispute, none of Customer's or TriSMART's agents or representatives, may pursue the dispute in arbitration as a class action, class arbitration, private attorney general action or other representative action, nor may any such dispute be pursued on Customer's or our behalf in any litigation in any court except as specifically provided below. This means that the arbitration may not address disputes involving other persons with disputes similar to the disputes between Customer and TriSMART. If any part of this paragraph or this Section X is found to be unenforceable by an arbitrator or a court having jurisdiction over a dispute between Customer and TriSMART, then this entire Section X (except for this sentence and the following sentence) shall be automatically inapplicable to that dispute. **EVEN IF ANY PART OF THIS SECTION IS FOUND TO BE UNENFORCEABLE AS DESCRIBED ABOVE, CUSTOMER AND TRISMART EACH AGREE TO WAIVE THE RIGHT TO A TRIAL BY JURY IN CONNECTION WITH ANY DISPUTE THAT MIGHT ARISE BETWEEN OR INVOLVING CUSTOMER AND TRISMART AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING IN CONNECTION WITH ANY SUCH DISPUTE.**

BECAUSE CUSTOMER AND TRISMART HAVE AGREED TO ARBITRATE ALL DISPUTES EXCEPT AS SPECIFICALLY PROVIDED IN THE LAST PARAGRAPH OF THIS SECTION X, CUSTOMER AND TRISMART WILL NOT HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT, OR TO HAVE A JURY TRIAL ON THAT DISPUTE, OR ENGAGE IN \DISCOVERY EXCEPT AS PROVIDED FOR IN THE CONSUMER ARBITRATION RULES. FURTHER, CUSTOMER WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS PERTAINING TO ANY DISPUTE. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING ON THE PARTIES AND MAY BE ENTERED AND ENFORCED IN ANY COURT HAVING JURISDICTION, EXCEPT TO THE EXTENT IT IS SUBJECT TO REVIEW IN ACCORDANCE WITH APPLICABLE FEDERAL LAW GOVERNING ARBITRATION AWARDS. OTHER RIGHTS THAT CUSTOMER OR TRISMART WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

NOTWITHSTANDING THE FOREGOING, NOTHING HEREIN CONTAINED SHALL BAR CUSTOMER OR TRISMART FROM: OBTAINING INJUNCTIVE RELIEF FROM A COURT AGAINST THREATENED CONDUCT THAT COULD CAUSE IRREPARABLE HARM, LOSS OR DAMAGE, UNDER THE USUAL EQUITY RULES, INCLUDING THE APPLICABLE RULES FOR OBTAINING RESTRAINING ORDERS AND PRELIMINARY INJUNCTIONS; OR OBTAINING A JUDGMENT FROM A COURT HAVING JURISDICTION CONFIRMING THE AWARD OF THE ARBITRATOR; OR OBTAINING RESOLUTION OF A DISPUTE IN A SMALL CLAIMS COURT IF THE DISPUTE FALLS WITHIN THE JURISDICTION OF THE SMALL CLAIMS COURT (PROVIDED, HOWEVER, THAT NO ATTEMPT IS MADE TO TRANSFER RESOLUTION OF SUCH A DISPUTE FROM A SMALL CLAIMS COURT TO A COURT OF GENERAL JURISDICTION).

## XII.  <u>Governing Law</u>

The laws of the State of Texas shall govern this Warranty Agreement.

## XIII.  <u>Severability</u>

If any provision of this Warranty

Agreement is determined to be unenforceable or invalid, the remaining provisions shall be enforced in accordance with their terms or will be interpreted or re-written so as to make them enforceable.

If Customer is in default under the Loan and Security Agreement or the Home Improvement Agreement, Customer shall be deemed to also be in default under this Warranty Agreement.

## XIV.    Responsible Persons

Each person who signs this Warranty Agreement as a Buyer or Co-Buyer will be individually and jointly responsible for all obligations of the Buyer or Co-Buyer under this Warranty Agreement. This means TriSMART can enforce our rights against any one of Customer individually or against some or all of Customers together for any obligations of the Buyer or Co-Buyer under this Warranty Agreement.  TriSMART may release any Buyer or Co-Buyer and any remaining Buyer and Co-Buyer will still be required to fulfill all obligations of the Buyer or Co-Buyer under this Warranty Agreement. TriSMART may release our security interest in the System without affecting the obligation of any Buyer or Co-Buyer under this Warranty Agreement. This Warranty Agreement shall be binding upon each of Customer's heirs and legal representatives and TriSMART may enforce this Warranty Agreement against Customer's heirs or legal representatives.

## XV.    Right to Cancel

Customer is voluntarily entering into this Warranty Agreement and can cancel it within ten (10) calendar days if Customer so chooses.

## XVI.    Default

Customer will be in default if Customer commits fraud, fails to keep any other promise in this Warranty Agreement, breaches any obligation under this Warranty Agreement, or makes any false or misleading representation under this Warranty Agreement or on the application relating to this Warranty Agreement. If Customer is in default the limited warranties provided for in this Warranty Agreement are void.

**Customer Name:** Kassandra Elejaraza

**Signature:** _Kassandra Elejaraza_
636f20f50948b1a9d87a32cf0a5167e4e0c7a91f4526

**Date:** February 26, 2022

**TriSMART Solar, LLC**

**Signature:** Taylor Pratt

**Title:** *Funding Director*

**Date:** 02/26/2022

9

# Envelope Report

| | |
|---|---|
| ID | d6721c14-8bfe-4a51-80e2-f74ac72b3098 |
| Created | 2022-02-26T22:42:18.734Z |

| Document | Signer | Signer ID | IP Address | Timestamp |
|---|---|---|---|---|
| TXSMART - Install Agreement - Battery & Generator | Kassandra Elejarza<br>kvelejarza@gmail.com | 636f20f50948b1a9d87a32cf0a5167e4e8c7a9f1452611127e2773b0ddce4642 | 174.197.24.118 | 2022-02-26T22:50:02.101Z |